**STATE of Missouri, ex rel. PAIN, AN-ESTHESIA AND CRITICAL CARE SERVICES, P.A., Relator,**

**v.**

**Hon. J. Brendan RYAN [1], Presiding Judge Division One, Circuit Court of the City of St. Louis, Respondent.**

---

1. Subsequent to the issuance of our preliminary rule Judge George Adolf, who issued the order disputed herein, died. Upon motion under Rule 52.13(d), the Hon. J. Brendan Ryan, Judge Adolf's successor as presiding judge of the 22nd

STATE of Missouri, ex rel. John KRUPKA, M.D., Relator,

v.

Honorable William M. NICHOLLS, Judge of the Circuit Court of the City of St. Louis, Missouri, Division No. 12, Respondent.

STATE of Missouri ex rel. ST. FRANCIS REGIONAL MEDICAL CENTER, INC., Relator,

v.

Honorable William M. NICHOLLS, Judge of the Circuit Court of the City of St. Louis, Respondent.

Nos. 52538, 52669 and 52721.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 10, 1987.

Motion for Rehearing and/or
Transfer Denied
April 9, 1987.

Application to Transfer Denied
May 19, 1987.

Stephen D. Hoyne, Amelung, Wulff & Willenbrock, St. Louis, for relator Pain, Anesthesia and Critical Care Services.

Bernard Brinker, Gary P. Paul, Brinker, Doyen & Kovacs, Clayton, for relator John Krupka, M.D.

Eugene K. Buckley, Evans & Dixon, St. Louis, for relator St. Francis Regional Medical Center.

James F. Koester, James F. Koester, Inc., St. Louis, for respondents.

CARL R. GAERTNER, Judge.

We have ordered the consolidation of three petitions for writs of prohibition

which challenge the jurisdiction of a Missouri court over non-resident defendants. A review of the factual and procedural background is essential.

Brendan Duncan and his parents, Georgia and Terry Duncan, are plaintiffs in the underlying action alleging medical malpractice against Cardinal Glennon Memorial Hospital for Children, Kenneth Smith, M.D., St. Francis Regional Medical Center, Inc., John Krupka, M.D., and Pain, Anesthesia and Clinical Care Services (hereinafter PACCS). It is alleged that Brendan was born on April 4, 1979, affected with hydrocephalus. On April 6, 1979, at Cardinal Glennon Hospital in St. Louis, Missouri, Dr. Kenneth Smith performed surgery which included the installation of a shunt to drain excessive fluid from Brendan's brain. Additional surgery by Dr. Smith was necessitated by a failure of this shunt on September 1, 1980, after which Brendan experienced seizures. On April 15, 1981, surgery was performed in Wichita, Kansas to repair another shunt failure. Further surgery occurred in Wichita on August 1, 1982 and August 5, 1982 and it is alleged that during the latter procedure Brendan "experienced a heart failure and resulting permanent brain damage". Surgery was again performed in Wichita on August 10 and August 13, 1982. The petition charges certain acts of negligence against Dr. Smith and Cardinal Glennon Hospital by reason of the original surgery and that of September 1, 1980. It charges negligence against Dr. Krupka and St. Francis Regional Medical Center, Inc. by reason of the surgical procedures of August 1 and August 5, 1982. Negligence is also charged against PACCS arising out of the rendition of anesthesia to Brendan on August 5, 1982. The petition alleges the negligence of all of the defendants was "joint and concurrent" in causing Brendan to sustain heart damage and permanent, irreversible brain damage.

Upon being served with process in Kansas pursuant to § 506.500, RSMo.1986, the Missouri Long Arm statute, each of the Kansas defendants filed motions to dismiss and to quash service supported by affidavits denying any act in or contact with Missouri sufficient to subject the defendants to the jurisdiction of Missouri courts. Plaintiffs thereupon amended their petition by interlineation alleging:

1. Plaintiff further states that personal service and jurisdiction is valid and proper as to St. Francis Regional Medical Center, Inc., Dr. John Krupka and Pain, Anesthesia & Clinical Care Services for the following reasons:

aa. Said non-resident defendants are subject to the provisions of Missouri Civil Procedure Rule 54.06.

bb. That said non-resident defendants undertook treatment of the plaintiff concurrently and directly connected with the treatment being rendered plaintiff in Missouri's jurisdiction.

cc. That said non-resident defendants were paid a fee for services rendered to plaintiff while rendering treatment to plaintiff in connection with and concurrently with Missouri residents.

dd. That the quality and nature of said non-resident defendant's [sic] activity is such that it is reasonable and fair to require said defendants to conduct their defense in this state.

ee. That there has been reasonable notice to said non-resident defendants, that an action has been brought and there is a sufficient connection between said non-resident defendants and this forum as to make a failure to require [sic] defense in this forum.

ff. That there were financial benefits directed [sic] by said non-resident defendants.

gg. That said non-resident defendants sought and obtained medical fees.

hh. That there was a doctor-patient relationship that existed between plaintiff, the non-resident defendants and the resident defendants.

ii. That said non-resident defendants knew that their suggested medical techniques would be followed.

jj. That there was correspondence and exchange of medical records between said non-resident defendants and the resident defendants.

kk. That plaintiff claims that physical injury was visited upon a personal bond [sic] between resident and non-resident defendants while said defendants were participating jointly in treating plaintiff.

ll. That there have been contacts between [sic] non-resident defendants in the State of Missouri.

With the record in this posture the motions were submitted to the Honorable William M. Nicholls who, on April 13, 1984, entered his order stating:

Said Motions are herewith denied and overruled on the basis of *Sperandino [sic] v. Klymer,* [sic] 581 S.W.2d 377 (Mo. banc 1979). We feel there is joint treatment by the respective defendants, all of whom have received sufficient notice, that it is reasonable these matters be disposed of in one action."

The Kansas defendants thereupon filed petitions for writs of prohibition in this court which were denied. Similar relief sought in the Supreme Court of Missouri was denied "in the exercise of the court's discretion." PACCS then filed interrogatories in the circuit court action, in response to which plaintiffs admitted that they did not claim PACCS performed any act in Missouri, forwarded any correspondence or communication into Missouri, or did anything to avail itself of the opportunity of conducting activities within Missouri. Based upon these responses PACCS filed its motion for summary judgment on which the Honorable George A. Adolf ruled as follows:

Defendant Pain, Anesthesia and Critical Care Services, P.A.'s motion for summary judgment considered after being taken as submitted. This Court is inclined to sustain said motion but for the fact that the Honorable William M. Nic-

holls has previously ruled upon the same motion by denying it. Therefore, this Court feels bound by the ruling of Judge Nicholls and overrules said motion for summary judgment.

PACCS then filed the instant petition for writ of prohibition and we issued our preliminary rule. Dr. Krupka and St. Francis Regional Medical Center then promptly renewed their challenge to Missouri jurisdiction by each filing petitions for writs of prohibition denominating Judge Nicholls as respondent. Because of the common issue of jurisdiction, we ordered consolidation of the three petitions.

After we issued our preliminary rules, plaintiffs filed in this court a pleading entitled "Amended Answers to Interrogatories." This pleading, not signed by plaintiffs and not under oath, purports to withdraw the answers filed in the circuit court to interrogatories of PACCS and to substitute answers alleging that said defendant had forwarded medical records into Missouri with the plaintiff, thereby causing an effect and conducting activities within Missouri.[2] This procedural aberration, in light of admissions made in this court, further illustrates the commonality of the issue in all three cases. In their brief and in oral argument before this court, plaintiffs' attorneys concede the basis of their claim of jurisdiction in Missouri is identical as to all three non-resident defendants: forming a doctor-patient relationship with a Missouri resident, receiving a fee, giving treatment which produced an effect in Missouri and forwarding medical records to Missouri.[3]

■ Although we recognize the existence of some procedural anomalies surrounding the manner in which these cases are presented to us, we decline to base our decision on procedural grounds. The prior denials of the petitions for writs of prohibition by this court and by the Supreme Court were perhaps predicated upon an

**2.** Despite the procedural irregularities surrounding the amended answers to interrogatories, we overrule the motion of PACCS to strike.

**3.** PACCS and Dr. Krupka by sworn affidavit have denied forwarding any records to Mis-

souri. An affidavit filed on behalf of St. Francis Regional Medical Center denying any contact with Missouri is silent regarding the forwarding of medical records.

insufficient development of a record in opposition to the amended petition alleging activities which would tend to establish minimum contacts with Missouri by the non-resident defendants. In any event these denials are not to be viewed as decisions on the merits and have no precedential value. *Lipton Realty Co. v. St. Louis Housing Authority*, 705 S.W.2d 565, 570 (Mo.App.1986). This general rule was implicitly noted by the Supreme Court in its denial of the prior writ applications "in the exercise of the court's discretion."

■ The background of this case may be succinctly summarized as follows: plaintiffs' original petition was devoid of any allegation tending to show any jurisdiction in Missouri over the non-resident defendants or their susceptibility to service under the Missouri Long Arm statute, § 506.500, RSMo.1986, and Rule 54.06. Upon the challenge to jurisdiction and service, plaintiffs filed an amendment to their petition alleging joint treatment of Brendan by the non-resident defendants "concurrently and directly connected with treatment being rendered in Missouri," including the exchange of correspondence and medical records. This was the posture of the case when the original motions to dismiss and to quash service were overruled. This posture changed dramatically when plaintiffs responded to the interrogatories of PACCS and admitted that the defendant had no contact with Missouri. Accepting plaintiffs' amended answers to these interrogatories together with the admission that these amended answers are equally applicable to all non-resident defendants, the sum and substance of plaintiffs' claim of Missouri jurisdiction is the treatment of a Missouri resident for a fee and the forwarding of medical records to doctors in Missouri. Such activities do not constitute minimum contacts with Missouri sufficient to meet the due process requirement of the 14th Amendment, or the transaction of business or commission of a tortious act within this state as required by § 506.500, RSMo.1986 and Supreme Court Rule 54.06 authorizing service of process on non-resident defendants.

Crucial to the resolution of the issues here presented is the case of *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377 (Mo. banc 1979). In *Sperandio*, a Utah physician responded by letter to a Missouri doctor's request for advice regarding a contemplated surgical procedure to be performed in Missouri. In a subsequent medical malpractice action filed in Missouri, the patient joined the Utah physician and obtained service under the Long Arm statute. When first considering his challenge to Missouri jurisdiction in *State ex rel. Sperandio v. Clymer*, 568 S.W.2d 935 (Mo. banc 1978), *vacated sub nom. Pemberton v. Sperandio*, 439 U.S. 812, 99 S.Ct. 69, 58 L.Ed.2d 103 (1978), the Missouri Supreme Court concluded that the Utah physician's response to the Missouri doctor's letter was sufficient to warrant the exercise of jurisdiction in Missouri courts because Missouri had an interest in securing redress for its citizens and the doctor's acts were performed for the purpose of accomplishing an effect in Missouri. In vacating the decision, the United States Supreme Court directed reconsideration in light of *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Complying with this mandate the Missouri Supreme Court reversed its earlier decision and issued a new opinion, *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377 (Mo. banc 1979), in which it discussed the *Kulko* decision and its predecessors, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In our opinion, *Kulko* does not announce new law. Rather, it relies on the long-established rules of *International Shoe* and *Hanson* that "a defendant 'have certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice.'" (*Kulko*, 98 S.Ct. at 1693 quoting *International Shoe*). *Kulko* recognized that " '[i]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within

the forum State...." (*Kulko*, 98 S.Ct. at 1698, quoting *Hanson*). The Court stated "[i]n light of our conclusion that appellant did not purposefully derive benefit from any activities relating to the State of California, it is apparent that the California Supreme Court's reliance on appellant's having caused an 'effect' in California was misplaced." (*Kulko*, 98 S.Ct. at 1699).

*Kulko* also recognized that "[l]ike any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." 98 S.Ct. at 1697.

*Sperandio*, 581 S.W.2d at 382.

In reaching the conclusion that the Utah physician had not purposely availed himself of the privilege of conducting activities in Missouri and that there were not "sufficient minimum contacts with Missouri so as to subject him to *in personam* jurisdiction," the second *Sperandio* opinion expressly notes the fact that he had not undertaken to treat the plaintiff and that no fee was requested or offered. *Id.* at 382–83. Respondents point to the allegations of plaintiffs' amended petition that the non-resident defendants in this case did treat Brendan and did receive a fee and they argue that these are distinguishing factors which make *Sperandio* inapplicable. We disagree.

It is clear that the treatment furnished Brendan in Kansas was rendered not in concert or conjunction with treatment he had received in Missouri, despite the unverified conclusionary allegations of the amendment to plaintiffs' petition. The fact that he was in Kansas when the shunt failed was pure happenstance. The fee paid to the Kansas defendants was for services rendered in Kansas and not for consultation with Missouri doctors or for the sending of reports of what had occurred in Kansas to those who might be treating Brendan in the future. Nothing allegedly done in Kansas was intended to have an effect in Missouri. Indeed, plaintiffs allege the effect of the procedure in Kansas was immediate: heart failure and resultant brain damage during surgery. Nothing is alleged tending to show the Kansas defendants purposely availed themselves of the privilege of conducting activities in Missouri, derived any benefits from activities relating to Missouri, or invoked the benefits and protection of Missouri laws. Moreover, nothing allegedly done by the Kansas defendants reaches the essential criterion that "the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense" in Missouri. *Sperandio*, 581 S.W.2d at 381, quoting from *Kulko*, 98 S.Ct. at 1697.

Two of the factors considered in determining the reasonableness and fairness of subjecting a non-resident defendant to the jurisdiction of a foreign state are of particular note here. One is the principle that the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 502 (1980), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, 1298 (1958). The Kansas defendants in this case did not solicit Brendan as a patient. He was, we are told, in Wichita visiting his grandparents when the need for emergency medical treatment developed. The reason for his presence in Kansas, as well as the cause of his contact with these defendants, was Brendan's alone, totally unrelated to any activity on the part of the defendants.

Secondly, the determination of reasonableness and fairness involves consideration of whether a defendant, by reason of his conduct and connection with the forum state, "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. Such anticipation may be found where the defendant "purposely avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298.

This "purposeful availment" requirement is said to insure that a defendant will not be haled into a foreign jurisdiction as a result of random, fortuitous or attenuated contacts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985). It is apparent that this factor is absent in the instant case.

■ Moreover, plaintiffs in the underlying action have the burden of showing not only that the assertion of jurisdiction over the non-resident defendants is in accord with the due process requirements of the 14th Amendment, but also that these defendants have engaged in one of the acts enumerated in § 506.500, RSMo.1986, and Rule 54.06 so as to authorize out-of-state service of process. *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner,* 677 S.W.2d 325, 327 (Mo. banc 1984). Counsel for respondents argue that by negligently treating and causing a permanent injury to a Missouri resident, the non-resident defendants "caused an effect" in Missouri, thereby committing a tortious act in this state in similar fashion to the non-resident manufacturer who sells a defective product which causes an injury in Missouri. We note that here the injury is alleged to have been sustained during the surgical procedure in Kansas. Moreover, an identical argument was rejected in *Sperandio,* 581 S.W.2d at 383. Likewise, the sending of reports to Missouri describing completed acts performed in Kansas does not satisfy the transaction of business in Missouri subsection of the statute and the rule.

"[P]rohibition is the appropriate remedy to forbear patently unwarranted and expensive litigation, inconvenience and waste of time and talent." *State ex rel. New Liberty Hospital District v. Pratt,* 687 S.W.2d 184, 187 (Mo. banc 1985). The concession of plaintiffs' attorney that the claim of jurisdiction and the validity of long arm service as to all three non-resident defendants is predicated solely upon the factors we have determined to be inadequate to satisfy the due process requirements of the 14th Amendment and of the Long Arm statute causes the challenged action to fall within this description.

Policy reasons also support the result we reach by application of legal principles to the facts of the case. Should a Missouri resident visiting in or traveling through another state require emergency medical care, he should not be met with reluctant treatment resulting from the specter of being haled into a Missouri court to defend against accusations of negligent treatment. Nor should a physician rendering treatment to a Missouri resident in a neighboring state have any reluctance to forward medical reports to the Missouri doctors who might undertake follow-up care upon the traveler's return to his home. Such considerations of policy clearly outweigh the possible inconvenience to plaintiffs of bringing their suit in Kansas to recover for injuries sustained in Kansas from alleged negligence occurring in Kansas.

Accordingly, in all three cases our preliminary rules prohibiting the respondent judges from continuing to exercise jurisdiction over the non-resident relators are made absolute.

SNYDER, C.J., and SATZ, J., concur.