**Michael B. CONWAY and Beverly Conway, Appellants,**

v.

**ROYALITE PLASTICS, LTD., Respondent,**

**British Vita, PLC, and Spartech Corporation, Defendants.**

No. SC 82067.

Supreme Court of Missouri, En Banc.

Feb. 22, 2000.

Rehearing Denied March 21, 2000.

26. 951 S.W.2d 718 (Mo.App.1997).

27. *Id* at 719–20.

28. *Id* at 720.

Drew C. Baebler, Michael Nepple, St. Louis, for Appellants.

Dean L. Franklin, Christopher S. Jones, St. Louis, for Respondent.

PER CURIAM.[1]

The Conways appeal from the trial court's judgment dismissing their petition against a Scottish corporate defendant for lack of personal jurisdiction. The judgment is affirmed.[2]

Michael B. Conway was an employee of Atlas–Alchem Plastics, Inc., a firm in Cape Girardeau, Missouri. The firm produces extruded sheet and rollstock plastics for manufacturing customers. Mr. Conway was injured when he added a PVC (polyvinyl-chloride) material to a plastic extruder. The PVC material was contained in a box produced by defendants, Royalite Plastics Ltd., British Vita, PLC ("British Vita"), and/or Spartech.

Mr. Conway and Beverly Conway, his wife, (plaintiffs) filed a three-count petition. They alleged that the box produced by the defendants was mislabeled and sought damages for strict liability, negligent failure to warn, and loss of consortium.

British Vita and Royalite Plastics Limited[3] filed a *joint motion to dismiss* for lack of personal jurisdiction. The *motion was* supported by the affidavits of Richard Donnell, Royalite Plastic Limited's managing director, and Mark Stirzaker, British Vita's solicitor. The affidavits were made on personal knowledge.

Donnell, who had been managing director since 1985, attested that Royalite Plastics Limited was incorporated in Scotland in 1986 and became a wholly-owned subsidiary of British Vita, PLC, in 1987. He further attested that the company's business involved the manufacture and supply of extruded flat plastic sheeting; that it does not export its products to the United States because products similar to those produced by Royalite Plastics Limited were also produced by its sister company in the United States; that Royalite Plastics Limited utilizes an ABS (acrylonitrile-butadiene-styreneterpolymer) PVC blend granulated compound, which is used to make an extruded flat sheet, but never sent this compound to the United States. Donnell also averred that Royalite Plastics Limited provided a small quantity (approximately five) of flat plastic A4 sheets containing ABS PVC as a sample to employees of Spartech who were visiting Scotland in 1988; that Spartech had requested the samples because it wished to determine whether Spartech would be capable of producing similar products in its own extruders in the United States market; that Royalite Plastics Limited did not transact any further business with Spartech; that it did not intend or desire to establish any connection with the state of Missouri; and that, to the best of his knowledge, it supplied no other products to Spartech in the state of Missouri. He attested that Royalite Plastics Limited never supplied any products to Atlas–Alchem Plastics, Inc., in the state of Missouri and did not manufacture or supply the product alleged to have caused the injury.

Stirzaker attested that British Vita became a holding company in 1986 and purchased Royalite Plastics, Ltd., in 1987, which became its wholly-owned subsidiary. He further attested that British Vita was only a holding company; that it does not

---

1. The appeal in this case was originally decided by the Court of Appeals, Eastern District, in an opinion written by the Honorable Kathianne Knaup Crane. Portions of that opinion are incorporated herein without further attribution.

2. The parties' joint motion to allow briefing and oral argument is overruled.

3. Plaintiffs used the name "Royalite Plastics Ltd." whereas this defendant uses the name "Royalite Plastics Limited."

conduct any trading operations or manufacture or sell any products in the United Kingdom or overseas; that it did not carry on business in Missouri or in any part of the United States; and that it did not manufacture or sell the product alleged to be responsible for the injury to Mr. Conway.

Plaintiffs dismissed British Vita without prejudice. They filed a memorandum opposing Royalite Plastic Limited's motion to dismiss. Attached to the memorandum were Mr. Conway's affidavit, with exhibits, and the deposition testimony of Spartech's corporate designee, Jeffery Blessing, with exhibits.

Mr. Conway's affidavit did not set out that it was made on personal knowledge. He stated that the material being fed into the extruding machine at the time of his accident was not sheet plastic, but granulated plastic pellets. He further stated that to "the best of my knowledge, information and belief" the plastic pellets were "manufactured by Royalite Plastics, Ltd. (Scotland) because that is the name of the manufacturer listed on two Material Safety Data Sheets (MSDS) that were obtained by Spartech Plastics when I was in the hospital so that my doctors were aware of the nature of the product." Exhibit A attached to the affidavit was a document bearing the "Royalite Plastics Limited" name and titled "Decomposition Products from burning ABS Sheet." It contained safety information about ABS sheet. Exhibit B was an MSDS for a vinyl compound, which showed Royalite Plastics Ltd. of Scotland as manufacturer.

Plaintiffs also attached the deposition of Jeffrey Blessing. Blessing testified that he had been employed for one and one-half years as the controller for Spartech Plastics, the "d/b/a name" for Atlas–Alchem Plastics, Inc., which was a wholly-owned subsidiary of Spartech Corporation. For the three years prior to that, beginning in 1993, he was accounting manager for Spartech Corporation. He was not associated with either company at the time of plaintiffs' injuries in 1992. He testified he believed that Mr. Conway had run granular material containing PVC through the extruder. He believed that Spartech had obtained the material from Royalite Plastics in Scotland based on "internal documents".

Those internal documents were identified as Group Exhibit 2, which consisted of five sheets. Blessing testified that the first sheet, dated January 14, 1992, was a handwritten receiving report, which reported that five boxes of unidentified material, having a combined weight of 9,053 pounds, were received from "Scanfreight/Royalite" on January 14, 1992. The next sheet, bearing dates of January 3, 1992, and January 9, 1992, was a shipping order to "Red Arrow" for a type of plastic he did not recognize, which weighed 9,475 pounds. The third sheet was a shipping document for unspecified freight weighing 9,475 pounds delivered to Spartech Plastics on January 8, 1992. The fourth sheet was Atlas–Alchem's undated computer generated receiving document showing how "received" tags were put into Atlas–Alchem's inventory. The fifth sheet, a computer generated "receiver entry audit report" dated January 23, 1992, showed receipt of a two hundred twenty pound item from "Royalite" on January 14, 1992.

Blessing circled two items on the fourth sheet that he believed identified the product going through the extruder at the time of plaintiffs' injuries. Blessing testified that Spartech had no other evidence or documents that would show the company purchased "this material" from "Royalite Plastics Scotland." He did not know if Spartech had purchased any other material from "Royalite Scotland" in 1992 and did not believe that Spartech continued to purchase the material. He believed that the material came from "Royalite Plastics Scotland" and was granulated PVC. According to Blessing, only the first and fifth sheets in group Exhibit 2, which bear the name "Royalite," connect this defendant, Royalite Plastics Limited, the Scottish cor-

**318**

poration, to this transaction. No other records show that the transaction was conducted with Royalite Plastics Limited. He testified that Spartech did not pay for any of the products listed in Group Exhibit 2 because they were received as a sample.

The trial court granted Royalite Plastics Limited's motion, citing *Pohlmann v. Bil–Jax Inc.*, 954 S.W.2d 371 (Mo.App.1997). Spartech consented to a judgment against it. Plaintiffs appeal from the judgment dismissing Royalite Plastics Limited.

For their only point on appeal, plaintiffs contend that the trial court erred in dismissing their petition because they presented a prima facie case that personal jurisdiction existed under Missouri's long-arm statute and because the exercise of personal jurisdiction would satisfy the "minimum contacts" and "fair play and substantial justice" requirements of the due process clause of the Fourteenth Amendment. Plaintiffs argue that they established a prima facie case that Royalite Plastics Limited manufactured the product that caused plaintiffs' injuries, placed it into the stream of commerce, and purposefully directed the product to Spartech.

■ When a defendant raises the issue of lack of personal jurisdiction, the burden shifts to the plaintiff to make a prima facie showing of jurisdiction by showing: (1) that the action arose out of an activity covered by the long-arm statute, section 506.500,[4] and (2) that defendant had sufficient minimum contacts with the forum state to satisfy due process requirements in order to withstand the motion. *Chromalloy American Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. banc 1997). When the motion is based on facts not appearing on the record, the trial court may hear it on affidavits presented by the parties, or the court may direct that the matter be heard wholly or partly on oral testimony or deposition. *Id.; Rule 55.28.* The proper function of an affidavit

4. All statutory references are to RSMo 1994.

is to state facts, not conclusions. *Reid v. Johnson*, 851 S.W.2d 120, 122 (Mo.App. 1993).

■ The Missouri long-arm statute confers jurisdiction of Missouri courts over any cause of action arising from "[t]he transaction of any business within this state; [or] ... [t]he commission of a tortious act within this state[.]" *Section 506.500.* To demonstrate that the action arose out of an activity covered by this statute, a plaintiff must make a prima facie showing of the validity of its claim. *Stavrides v. Zerjav*, 848 S.W.2d 523, 527 (Mo. App. 1993); *Dillaplain v. Lite Industries, Inc.*, 788 S.W.2d 530, 533 (Mo.App.1990). A plaintiff need not prove all of the elements that form the basis of the defendant's liability, but must show that acts contemplated by the statute took place. *Id.* at 534.

■ The due process clause of the Fourteenth Amendment further limits the court's power to exercise *in personam* jurisdiction. *Id.* Due process requires that, in order to subject a non-resident defendant to *in personam* jurisdiction, the defendant have certain minimum contacts with the state so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Chromalloy*, 955 S.W.2d at 5. To determine whether a non-resident defendant has sufficient minimum contacts for a Missouri court to have personal jurisdiction, five factors should be considered: 1) the nature and quality of the contact; 2) the quantity of those contacts; 3) the relationship of the cause of action to those contacts; 4) the interest of Missouri in providing a forum for its residents; and 5) the convenience or inconvenience to the parties. *Dillaplain*, 788 S.W.2d at 534.

■ In order to establish minimum contacts within the forum state in a prod-

ucts liability case, a plaintiff must show that the manufacturer has taken some act by which it purposefully avails itself of the privilege of conducting business within the forum state. *Pohlmann,* 954 S.W.2d at 373. The defendant's conduct and connection with the forum state must be such that it should reasonably anticipate being haled into court there. *Id. See World–Wide Volkswagen,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ The facts set out by Royalite Plastics Limited were sufficient as a matter of law to show no basis for long-arm jurisdiction. Royalite Plastics Limited's motion and supporting affidavit clearly established no minimum contacts. Donnell's affidavit was sufficient to show that Royalite Plastics Limited did not take any act by which it purposely availed itself of the privilege of conducting business in Missouri. It manufactures and supplies extruded flat plastic sheeting and does not export its products to the United States. Its sole contact with plaintiff's employer was to supply a sample of one of its products to its employees who were visiting Scotland in 1988, because the employer wanted to manufacture a similar product. Not only did Royalite Plastics Limited not purposely avail itself of the privilege of doing business in Missouri by giving this sample but also the provision of that sample did not give rise to the cause of action because this sample was a sheet product, whereas plaintiff claims that a granulated material caused the injury.

Taking as true all of the material submitted to the court by plaintiffs, it was insufficient to make the required prima facie showing of jurisdiction. Plaintiffs did not tie defendant Royalite Plastics Limited, the Scottish corporation, to the granular PVC material that Mr. Conway was feeding into his extruder except by conclusions based on speculation and conjecture. Plaintiffs did not show any minimum contacts with the state of Missouri or the validity of their claim. Plaintiffs wholly failed in their burden to make a prima facie showing of jurisdiction.

The trial court did not err in dismissing this case for lack of jurisdiction. Its judgment is affirmed.

All concur.