Susan MELLO, Individually and as Personal Representative for the Estate of Patricia Mello, Plaintiff/Appellant,

v.

James GILIBERTO, Jr., Do, Milton Gibson, MD, Paul Guentert, MD, John Lynch, MD, St. Joseph's Medical Center, Barnes–Jewish Hospital and Washington University, Defendants/Respondents.

No. ED 79491.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 5, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 25, 2002.

Application for Transfer Denied
May 28, 2002.

Susan H. Mello, Clayton, MO, acting pro se.

Philip L. Willman, Robyn G. Fox, Catherine Vale Jochens, Moser & Marsalek, P.C., St. Louis, MO, for respondents Giliberto & Gibson.

Kevin F. O'Malley, Weldon N. Johnson, Monica J. Gunn, The O'Malley Law Firm, St. Louis, MO, for respondent Guentert.

Robert T. Haar, Monica J. Allen, Haar & Woods, LLP, St. Louis, MO, for respondents Lynch & Washington University.

Robert A. Wulff, Mark F. Mueller, Amelung, Wulff & Willenbrock, P.C., St. Louis, MO, for respondent St. Joseph's Medical Ctr.

Kenneth W. Bean, Charles G. Schierer, Sandberg, Phoenix & Von Gontard, P.C., St. Louis, MO, for respondent Barnes–Jewish Hospital.

KATHIANNE KNAUP CRANE, Judge.

This is an appeal from the dismissal of a medical malpractice action. According to the allegations of the petition, Patricia Mello (patient) entered St. Joseph's Medical Center (SJMC) in South Bend, Indiana, on December 19, 1996 for elective femoral bypass surgery. She was treated at SJMC by Dr. James Giliberto, an osteopathic surgeon, Dr. Milton Gibson, a car-

diologist, and Dr. Paul Guentert, a critical care specialist. SJMC, Dr. Giliberto, Dr. Gibson, and Dr. Guentert (collectively, "the Indiana defendants") were each residents of Indiana at the time of the surgery and alleged harm. The petition alleged that the Indiana defendants were negligent and breached the standard of care in pressuring patient to undergo the surgery and in providing post-operative care, which, among other conditions, resulted in a drug-induced coma, high fever, and pneumonia. On January 1, 1997 plaintiff brought in new physicians to treat patient. On January 14, 1997 patient was transferred to Barnes Jewish Hospital (BJH) in St. Louis, Missouri, which is part of the Washington University Medical Center (University). At BJH, patient was treated by Dr. John Lynch. The petition alleged that BJH, University, and Dr. Lynch (collectively, "the Missouri defendants") committed additional acts of malpractice on patient. Patient died at BJH on February 6, 1997.

Plaintiff, Susan Mello [1], patient's daughter and personal representative, filed a medical malpractice action in the Circuit Court of the City of St. Louis against the Indiana and Missouri defendants to recover damages for personal injuries, lost chance of recovery, battery/lack of informed consent, wrongful death and violations of various state and federal policies on the care and treatment of the elderly. The Indiana defendants separately moved to dismiss on the ground that Missouri lacked personal jurisdiction, which motions were granted on October 5, 2000. The Missouri defendants separately moved to dismiss on the ground that plaintiff failed to file a health care affidavit, which motions were granted on December 28, 2000. The trial court denied all of plaintiff's post-judgment motions.

On appeal plaintiff challenges the dismissal of the Indiana defendants for lack of jurisdiction and the dismissal of her claims against the Missouri defendants for failure to file a health care affidavit. We affirm.

## DISCUSSION

### I. Motions to Strike

Before addressing the merits of this appeal, we take up defendants' motions to strike plaintiff's brief or dismiss the appeal for failure to comply with the appellate rules of the Missouri Rules of Civil Procedure. The motions are well-taken. The statement of facts violates Rule 84.04(c), which requires a fair and concise statement of the facts relevant to the questions presented for determination without argument, and Rule 84.04(i) which requires that all facts be supported by references to the legal file. Plaintiff's page-long points fail to follow the format or contain the content directed by Rule 84.04(d). In addition, the points are not restated at the beginning of the section of the argument discussing the point, as required by Rule 84.04(e), but are replaced by one-sentence contentions.

■ Violations of Rule 84.04 are grounds for this court to dismiss the appeal. *Shochet v. Allen*, 987 S.W.2d 516, 518 (Mo.App.1999); *Faith Baptist Church of Berkeley, Inc. v. Heffner*, 956 S.W.2d 425, 426 (Mo.App.1997). However, in this case we exercise our discretion to *ex gratia* review plaintiff's claims in order to render a decision on the merits. Accordingly, we will address those claims of error raised in the points relied on which are supported and further developed in the argument. We will not address arguments in the brief not fairly encompassed in the

1. Plaintiff, a licensed attorney, represents her- self in this action.

points relied on or issues raised in the points which are not properly supported because they are not preserved for review. Rule 84.04(e); *Shochet*, 987 S.W.2d at 518; *Chancellor Dev. Co. v. Brand*, 896 S.W.2d 672, 678 (Mo.App.1995).

## II. *Dismissal for Lack of Personal Jurisdiction*

For her first two points, plaintiff asserts that the trial court erred in dismissing the Indiana defendants for lack of personal jurisdiction. She first argues that the court committed a number of procedural errors in disposing of the motion, which resulted in a denial of due process. She next contends that the Indiana defendants were subject to the Missouri long arm statute, Section 506.500 RSMo 2000[2], because they committed a tort or transacted business in Missouri.

### A. *Procedural Challenges*

In her first point plaintiff contends the trial court denied her due process in granting the motions to dismiss for lack of personal jurisdiction because (1) SJMC's motion to dismiss is not in the court file; (2) the trial court failed to grant a stay in the proceedings in order to allow discovery; (3) the trial court failed to provide notice that it would consider the affidavits of Dr. Guentert, Dr. Gibson and Dr. Giliberto "as if on a motion for summary judgment;" and (4) the court failed to consider the facts in the plaintiff's affidavit or "take the ultimate facts." None of these contentions has merit.

### 1. *SJMC's Motion to Dismiss*

Plaintiff first argues that SJMC's motion to dismiss was not in the court file.

This argument has no merit. The record on appeal contains a copy of SJMC's motion to dismiss for lack of personal jurisdiction which was file-stamped by the Clerk of the Circuit Court of the City of St. Louis on July 26, 2000. Although the motion bears the cause number of plaintiff's original case[3], it was before the trial court when it decided the motions to dismiss. In its order dismissing the Indiana defendants, the trial court recited that SJMC filed its original challenge to jurisdiction on July 26, 2000 and that it had the SJMC motion before it.

### 2. *Denial of Stay of Proceedings for Discovery*

Plaintiff next contends that the trial court should have stayed the proceedings in order to allow her time to conduct discovery. She argues that due process requires discovery on jurisdictional issues.

Plaintiff filed a memorandum in opposition to the motions to dismiss for lack of personal jurisdiction, in which she requested a stay in order to conduct discovery on the Indiana defendants' motions to dismiss. In its order dismissing the Indiana defendants, the trial court found that "[p]laintiff, in asking for time for further discovery, did not articulate any valid basis for personal jurisdiction over the Indiana defendants and the Court does not believe that it would be appropriate to delay a ruling on the defendants' motions."

▮ The trial court is vested with wide discretion in administering the rules of discovery. *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997). A trial court abuses its discretion when its ruling is " 'clearly against the logic of the circumstances then before the court and is so

---

**2.** All further statutory references are to RSMo 2000, unless otherwise indicated.

**3.** As detailed in Section III of this opinion, plaintiff filed a medical malpractice action against these defendants in February, 1999 which she subsequently dismissed on June 17, 1999. She refiled the action under the savings statute on June 16, 2000.

arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Id.* (quoting *Anglim v. Missouri Pac. R.R.*, 832 S.W.2d 298, 303 (Mo. banc 1992), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992)).

■ In order to be entitled to discovery, plaintiff is required to have alleged *facts* in the petition which, if true, establish jurisdiction. *State ex rel. Scott v. Marsh*, 661 S.W.2d 601, 603 (Mo.App.1983)(citing *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 893 (Mo. banc 1970)). In the absence of such alleged facts, plaintiff is not entitled to discovery. *Id.*

■ The trial court found that plaintiff did not allege any facts to support jurisdiction in her amended petition, but instead alleged legal conclusions of agency, joint liability, and actionable consequences. In her brief under this subpoint, plaintiff does not argue that she alleged jurisdictional facts, or explain why the trial court erred in concluding that her allegations were legal conclusions. Instead she only maintains that she has a due process right to discovery. Plaintiff has not shown that the trial court abused its discretion in denying her motion for discovery.

3. *Consideration of Affidavits Pursuant to Summary Judgment Procedures*

■ Plaintiff next argues that the trial court should not have granted the motions to dismiss because the court did not treat the motions as motions for summary judgment and provide notice that it would consider the affidavits of Dr. Guentert, Dr. Gibson, and Dr. Giliberto. Plaintiff's contention and its underlying premises are without merit. Although plaintiff does not cite it, the only rule that provides for a motion to dismiss to be treated as a motion for summary judgment is Rule 55.27.

That rule applies only to motions to dismiss for failure to state a claim.

■ In this case the Indiana defendants filed motions to dismiss for lack of personal jurisdiction under Section 506.500. In ruling on a motion to dismiss for lack of personal jurisdiction, a trial court may consider affidavits. *Chromalloy American v. Elyria Found.*, 955 S.W.2d 1, 3 n. 3 (Mo. banc 1997). Such consideration does not convert the motion to dismiss into a motion for summary judgment because the motion is not addressed to the merits of the underlying action, but only to the limited question of personal jurisdiction. *Id.* The trial court was not required to treat the motions to dismiss for lack of personal jurisdiction as motions for summary judgment.

4. *Consideration of Facts in Plaintiff's Affidavit*

■ In her next subpoint plaintiff asserts that the trial court failed to consider the facts in the plaintiff's affidavit or "take the ultimate facts (where included that there was one hospitalization and how the Indiana defendants would be liable with the Missouri defendants for the actions at the Missouri hospital where Patricia Mello came to Missouri for treatment of the harm caused by the Indiana defendants[).]" In her argument plaintiff does not indicate what facts in her affidavit the trial court failed to consider. She does include portions of the amended petition in a footnote. She contends these excerpts constitute "ultimate facts" which the trial court ignored, but she does not supply any legal authority or analysis explaining the trial court's duty with respect to these "ultimate facts" or their legal effect. The trial court ruled that her allegations supporting personal jurisdiction were not facts, but legal conclusions. The trial court explained in detail why plaintiff's conclusions did not support Missouri juris-

diction. The trial court's comprehensive orders analyzing plaintiff's position on jurisdiction demonstrate that it fully considered all of plaintiff's allegations. and contentions.

Plaintiff has not shown that the trial court erred in the manner in which it handled the motions to dismiss for lack of jurisdiction. Point one is denied.

### B. *Personal Jurisdiction*

For her second point plaintiff contends that the trial court erred in finding that Missouri lacked personal jurisdiction over the Indiana defendants because, she argues, they each committed a tort or transacted business in Missouri. She claims Missouri has jurisdiction under its long arm statute, Section 506.500, because: (1) each is liable for the harm caused by the Missouri defendants because the patient came to Missouri to have her Indiana injuries treated; (2) the Indiana defendants are jointly liable with the Missouri defendants because there was a single hospitalization with direct transfer from the Indiana hospital to the Missouri hospital; and (3) the Indiana defendants "should be answerable" in Missouri because their actions resulted in decedent's death in Missouri; the Indiana to Missouri transfer was initiated by the Indiana hospital through calls to Missouri; the Indiana defendants sent letters and bills to plaintiff in Missouri; and, Missouri should provide a forum for the litigation because plaintiff resides in Missouri, it is the only forum where the issues of causation and joint liability can be determined, and it is the most convenient forum for all the parties.

Each of the Indiana defendants challenged personal jurisdiction. Dr. Giliberto filed a motion, supported by his affidavit, challenging jurisdiction because plaintiff had not pleaded facts showing that the cause of action arose out of one of the activities listed in the Missouri long arm statute and that he had insufficient minimum contacts with Missouri to satisfy due process. He averred that he now resides in the State of Florida; that, at the time of the events referred to in plaintiff's petition, he was licensed to practice and practiced in the State of Indiana; that he was never licensed to practice in Missouri; that patient and plaintiff terminated his services on December 23, 1996; and that he did not participate in any care and treatment of patient outside the State of Indiana. He also attested that he made no calls, sent no letters, and had no contact with any health care provider in Missouri for the purpose of providing medical care or treatment to patient. He denied making any calls with respect to patient's transfer and argued that any such calls would be insufficient to satisfy minimum contacts.

Dr. Gibson filed a similar motion and affidavit. He also alleged that patient and plaintiff terminated his services on December 23, 1996.

Dr. Guentert filed a motion, supported by his affidavit, challenging jurisdiction because plaintiff did not allege a cause of action arising out of facts enumerated in the long arm statute or allege that he had sufficient minimum contacts with the state to satisfy due process. He stated that he has not transacted business in the State of Missouri, has not practiced medicine in the State of Missouri, and he never treated patient in the State of Missouri or discussed or participated in patient's care and treatment in Missouri. He averred that he only treated patient at SJMC in Indiana and that his professional relationship with patient ended on January 1, 1997, when plaintiff terminated his services and hired new physicians, and that he did not participate in and was not consulted about patient's transfer to BJH or patient's care and treatment at BJH. He

further attested that he never made telephone calls to the State of Missouri in regard to patient's care or treatment and had never sent letters or invoices to plaintiff.

SJMC filed a motion to dismiss which attached and incorporated the affidavit of its vice president and general counsel. Its position was that plaintiff failed to make any allegations supporting jurisdiction and none could be made because it is an Indiana not-for-profit corporation which maintains a health care center in Indiana, where plaintiff received treatment, and all acts and omissions alleged against it, if true, would have occurred in Indiana. It further denied that it had taken any other specified actions that could give rise to jurisdiction.

When a defendant raises the issue of lack of personal jurisdiction in a motion to dismiss, the burden shifts to the plaintiff to make a prima facie showing that the trial court has personal jurisdiction by demonstrating: (1) that the action arose out of an activity covered by the long-arm statute, Section 506.500, and (2) that defendant had sufficient minimum contacts with the forum state to satisfy due process. *Conway v. Royalite Plastics, Ltd.,* 12 S.W.3d 314, 318 (Mo. banc 2000). Activities covered by the long-arm statute include the transaction of any business within Missouri or the commission of a tortious act within Missouri. *Id.*

Due process requires that the defendant have certain minimum contacts with the state so that the exercise of *in personam* jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Conway,* 12 S.W.3d at 318. To determine whether a non-resident defendant has sufficient minimum contacts for a Missouri court to have personal jurisdiction, we consider five factors: "1) the nature and quality of the contact; 2) the quantity of those contacts; 3) the relationship of the cause of action to those contacts; 4) the interest of Missouri in providing a forum for its residents; and 5) the convenience or inconvenience to the parties." *Conway,* 12 S.W.3d at 318.

In order to establish minimum contacts within the forum state in a medical malpractice case, a plaintiff must show that the health care provider has taken some act by which it purposefully avails itself of the privilege of conducting business within the forum state. *See State ex rel. Sperandio v. Clymer,* 581 S.W.2d 377, 382–83 (Mo. banc 1979). The defendant's conduct and connection with the forum state must be such that it should reasonably anticipate being haled into court there. *State ex rel. Wichita Falls Gen. Hosp. v. Adolf,* 728 S.W.2d 604, 607 (Mo. App.1987) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).) "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). It is not enough that the injured patient have suffered an "effect" in the forum state, *Sperandio,* 581 S.W.2d at 383, or that the health care provider knew an effect would be suffered in the forum state. *Wichita Falls Gen. Hosp.,* 728 S.W.2d at 608–09.

Plaintiff filed a memorandum opposing the Indiana defendants' motions and also filed a document titled "Affidavit" which set out each of plaintiff's arguments in support of jurisdiction and followed each with a narrative incorporating a mixture of observed events, hearsay, information from the internet, speculation, and conjecture relating to patient's transfer to BJH,

calls made and bills sent to plaintiff in Missouri, and Missouri's convenience as a forum.

The trial court concluded that plaintiff did not make a prima facie case that the cause of action arose out of an activity covered by the long arm statute, because she had not stated facts but, rather, stated legal conclusions. It further found that plaintiff failed to show that any contacts between the Indiana defendants and the State of Missouri satisfied due process. It concluded that the only competent evidence established that the Indiana defendants had concluded their treatment of patient by the time she was transferred to Missouri. The court further concluded that any contacts the Indiana defendants had with Missouri were not the direct cause of any injury to patient or plaintiff in Missouri. It explained that plaintiff's theory that the Indiana and Missouri defendants were successive tortfeasors is not a basis for finding that the Indiana defendants committed a tort in Missouri.

Plaintiff's theories do not support her claims that the Indiana defendants committed a tort or transacted business in the state and had minimum contacts with the state. She first contends that the Indiana defendants committed a tort in Missouri because they were jointly liable with the Missouri defendants because patient came to Missouri for treatment of the condition caused by the Indiana defendants. The petition alleged that the Indiana defendants committed a tort which resulted in injuries in Indiana and were aggravated in Missouri. However, the Indiana defendants cannot be considered to have committed a tort in Missouri under a theory that they are joint tortfeasors with the Missouri defendants. The Missouri defendants were alleged to be successive tortfeasors. As such they can only be liable for their own negligence. *Walihan v. St. Louis–Clayton Orthopedic Group,* 849 S.W.2d 177, 180 (Mo.App.1993). When tortfeasors act independently of each other and commit their several wrongs at different times, " 'the tort of each, being several when committed[,] did not become joint because its consequences united with the consequences of the other.' " *State ex rel. Tarrasch v. Crow,* 622 S.W.2d 928, 932 (Mo. banc 1981) (quoting *Staehlin v. Hochdoerfer,* 235 S.W. 1060, 1062 (Mo.1921)). The allegations that the Missouri defendants committed successive acts of medical malpractice after patient was transferred to Missouri and that the Missouri and Indiana defendants are jointly liable do not convert the alleged acts of the Indiana defendants in treating patient in Indiana into a tort committed in Missouri.

The allegation that there was ·a "single hospitalization" because patient was transferred by SJMC and accepted by BJH for treatment of injuries caused by the Indiana defendants is conclusory and not supported by any relevant legal authority. Cases addressing the joint *liability* of *concurrent* tortfeasors are not germane to the issue of whether the Indiana defendants committed a tort in Missouri. SJMC averred that it was an Indiana not-for-profit corporation which maintained a health care center in Indiana and did not render medical care or perform any other type of business in Missouri. Plaintiff alleged that BJH was a Missouri corporation operating a hospital in St. Louis, Missouri. Patient was a patient in these hospitals at different times. It is undisputed that patient left SJMC on January 14, 1997. Plaintiff has not shown any relationship patient had with SJMC after January 14, 1997 on which the law would impose a duty of care.

Plaintiff further argues that her allegations that SJMC made telephone calls to Missouri to initiate the patient's transfer and that the Indiana defendants sent letters and bills to plaintiff in Missouri satisfy both the doing business prong of the long arm statute and minimum contacts. It is well-settled that these are not the type of acts which satisfy either the transaction of business or the minimum contacts requirements for personal jurisdiction in this situation. *Marler v. Hiebert*, 943 S.W.2d 853, 857–58 (Mo.App. 1997) (doctor's transmission of patient's data by facsimile and telephone to patient's physicians in Missouri and telephone call to Missouri physician relating to patient's transfer did not constitute minimum contacts where patient was being transferred to Missouri for care to be given by Missouri physicians). *See also State ex rel. P.A.C.C.S., P.A. v. Ryan*, 728 S.W.2d 598, 602, 604 (Mo.App.1987) (forwarding of medical records to doctors in Missouri does not satisfy transaction of business or minimum contacts).

Plaintiff's claim that the Indiana defendants should be answerable in Missouri because plaintiff died in Missouri likewise does not establish minimum contacts or the commission of a tort in Missouri. In examining minimum contacts we look at the defendant's conduct and connection with Missouri, not whether the patient suffered an "effect" in Missouri. *Sperandio*, 581 S.W.2d at 382, 383; *Wichita Falls Gen. Hosp.*, 728 S.W.2d at 609. In *P.A.C.C.S.*, 728 S.W.2d at 604, we rejected the argument that outstate physicians who allegedly permanently injured a Missouri resident during out-of-state surgery committed a tortious act in Missouri because the "effect" of the injury was later suffered by the patient in Missouri.

Because plaintiff did not establish minimum contacts with Missouri, we do not need to determine whether the imposition of personal jurisdiction would comport with notions of "fair play and substantial justice." *Wichita Falls Gen. Hosp.*, 728 S.W.2d at 609. We therefore do not consider plaintiff's remaining claims about the interest and convenience of Missouri as a forum.

Plaintiff was required to show both that the cause of action arose out of an activity covered by the long arm statute and minimum contacts. She demonstrated neither. Point two is denied.

### III. Dismissal for Failure to File Health Care Affidavit

For her third point plaintiff contends that the trial court erred in dismissing the Missouri defendants on the grounds that plaintiff failed to file a health care affidavit pursuant to section 538.225. She argues that no health care affidavit is required in this case. Alternatively, she contends that she substantially complied with the statute.

#### A. Health Care Affidavit Requirement

Chapter 538 governs tort actions based on improper health care. Section 538.225 requires the filing of an affidavit for each defendant named in the petition, as follows:

1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused

or directly contributed to cause the damages claimed in the petition.

Section 538.225.1. The affidavit must state the qualifications of the health care provider to provide the opinion and must be filed no later than ninety days after the petition is filed. Sections 538.225.2 and 538.225.4. The court may, for good cause, give the plaintiff additional time to file the affidavit. Section 538.225.4. If a proper affidavit is not filed, the court may, upon the motion of any party, dismiss the action against that party without prejudice. Section 538.225.5.

■ Plaintiff argues that she was not required to file an affidavit because her claims against the physicians and hospitals were "common sense errors which violated standards of care set out in Missouri regulations and could be proved without expert testimony." The statute does not allow such an exception. The Missouri Supreme Court has specifically held that "nothing in Section 538.225 exempts a plaintiff from filing an affidavit who shows that the medical malpractice is of 'that untypical kind that does not require proof of standard of care by expert opinion.' " *Budding v. SSM Healthcare Sys.*, 19 S.W.3d 678, 680–81 n. 4 (Mo. banc 2000) (rejecting *dicta* to the contrary in *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 508 (Mo. banc 1991)).

■ A health care affidavit is required if the relationship of the parties is that of health care provider and recipient and if the "true claim" relates only to the provision of health care services. *Vitale v. Sandow*, 912 S.W.2d 121, 122 (Mo.App.1995) (claim for libel contained in doctor's report); *St. John's Regional Health Ctr. v. Windler*, 847 S.W.2d 168, 171 (Mo.App. 1993) (claims for false imprisonment resulting from diagnosis).

"Health care services" are statutorily defined as:

[A]ny services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized;

Section 538.205(5). In *Ferrier–Harris, Ltd. v. Sanders*, 905 S.W.2d 123 (Mo.App. 1995), we held a health care affidavit was required when a nursing home was alleged to have committed acts of medical neglect similar to those alleged against the Missouri defendants.

All of the counts in plaintiff's petition are within the statute requiring an affidavit because plaintiff's true claims in these counts relate solely to the wrongful acts of the health care providers in providing health care services to patient and the damages sought were for patient's personal injuries and death. The trial court did not err in concluding that a health care affidavit was required for each defendant.

**B. Compliance with Health Care Affidavit Requirement**

■ In the alternative, plaintiff argues that the trial court erred because she substantially complied with the statute. She first asserts that she had the case reviewed by medical personnel who gave her a verbal opinion confirming that the case had merit but who would not complete an affidavit because they were now employed with one of the defendants. The statute specifically requires that "*plaintiff or his attorney* shall file an *affidavit* with the court stating that he has obtained the

*written opinion* of a legally qualified health care provider." Section 538.225.1(emphasis added). Plaintiff's claim that she obtained a verbal opinion from medical personnel does not satisfy the statute.

 Plaintiff next asserts that she timely filed a motion for an extension and had good cause for an extension. The trial court has discretion to grant a time extension for good cause. Section 538.225.4. In this case there was no abuse of discretion.

Plaintiff first filed a petition in February, 1999. She obtained additional time, until June 19, 1999, to file a health care affidavit, but voluntarily dismissed the petition without prejudice on June 17, 1999, without having filed an affidavit. On June 16, 2000 plaintiff refiled the case under the savings statute, Section 516.230, and filed a first amended petition on July 25, 2000.

On August 31, 2000, plaintiff filed her first request for an extension of time to file the affidavit and made a supplemental request for additional time on September 19, 2000. The Missouri defendants, in the meantime, filed motions to dismiss. Plaintiff filed materials opposing the motions on September 25, 2000 and October 12, 2000. The court heard the motions, and, on December 28, 2000, issued its order granting the motions and dismissing plaintiff's claims against the Missouri defendants without prejudice.

Plaintiff filed several motions for reconsideration of the December 28, 2000 order. On January 3, 2001 she filed "Plaintiff's Rule 74.06 et al Motion to modify and amend and set aside the 12/29/00 order." On January 31, 2001 plaintiff filed a supplemental "Motion and Memorandum on Motion to Set Aside et al December 2000 Order." On February 26, 2001 plaintiff filed a "Notice" in which she stated that she had received "email confirmation" that a registered nurse had signed an affidavit regarding "the actions of the RNs (and staff supervised by them)." On or about March 12, 2001 plaintiff filed a "confirmation" that she had received an expert affidavit relating to the actions of the Missouri defendants. The "notice" and "confirmation" were not verified.

On March 13, 2001 the court heard plaintiff's motions to set aside and amend and took them under submission. On March 19, 2001 the court denied plaintiff's motions for the reasons that plaintiff "has failed to show good cause for her failure to timely file health care affidavits, has failed to show any reason why the Court should now vacate the prior dismissals and permit her to file affidavits, and plaintiff has still failed to present the Court with affidavits meeting the requirements of Section 538.225 RSMo."

On March 21, 2001 plaintiff filed a second "Rule 74.06 et al Motion to modify and amend and set aside," which was directed at the March 19, 2001 Order and Judgment. She also filed a supplemental motion and affidavit directed at the same order. On May 3, 2001 the court entered its order denying the motions.

Plaintiff litigated this case for over two years without filing a health care affidavit in the form and manner required by Section 538.225. The trial court did not abuse its discretion in determining that her excuses for failure to file (illegible copies of medical records, an automobile accident, experts' need for more time, and her claim to have produced an affidavit from a nurse on nursing issues in March, 2001) did not constitute good cause. Point three is denied.

*Conclusion*

The judgment of the trial court is affirmed. Defendants' motions to strike the

brief and/or dismiss the appeal are denied as moot.

WILLIAM H. CRANDALL, JR., P.J., and ROBERT G. DOWD, JR., J. concur.