**Dede MEAD, et al., Appellants,**

v.

**Robert D. CONN, M.D.,
et al., Defendants,**

and

**David V. HENDERSON,
M.D., Respondent.**

**No. WD 45550.**

Missouri Court of Appeals,
Western District.

Jan. 12, 1993.

Robert Perkins, Kansas City, for appellants.

Kenneth J. Reilly, Overland Park, for respondent.

Before FENNER, P.J., and TURNAGE and KENNEDY, JJ.

FENNER, Presiding Judge.

Appellants were the plaintiffs before the circuit court in a wrongful death action for the death of C.W. Mead. Appellant Dede Mead was the spouse of C.W. Mead and the mother of his minor children, Stacie Lynn Mead, Joshua William Mead, and Leslie Renee Mead. The appellants' cause of action against Dr. Henderson was dismissed by the circuit court for lack of personal jurisdiction on Dr. Henderson's motion to dismiss. Appellants appeal said dismissal.

A motion to dismiss is normally directed toward testing the sufficiency of the pleadings as they appear on their face. *EmpireGas, Inc. of Noel v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657, 660 (Mo. 1974). That is, a ruling on a motion to dismiss is ordinarily confined to the face of the petition. *Feinstein v. Edward Livingston & Sons, Inc.*, 457 S.W.2d 789, 792 (Mo.1970). Grounds not appearing on the face of the pleadings may be employed only when such matters are uncontroverted.

*Ebling v. Hardesty*, 354 S.W.2d 348, 351 (Mo.App.1962).[1]

The pleadings reflect that respondent, David V. Henderson, M.D., is a physician who resides and practices medicine in Garnett, Kansas. C.W. Mead and the appellants were also residents of Garnett, Kansas at the time of C.W. Mead's death. Appellants continue to reside in Garnett, Kansas.

It was further plead that C.W. Mead had been a patient of Dr. Henderson since 1985, and that on or about December 16, 1988, C.W. Mead came to Dr. Henderson's office, which was in Garnett, Kansas, suffering severe chest pain and pains radiating through his arms. Dr. Henderson examined C.W. Mead and performed an electrocardiogram (EKG).

The parties are in agreement that Dr. Henderson transmitted the EKG results to Cardiovascular Consultants, a cardiology group located in Kansas City, Jackson County, Missouri. Robert D. Conn, M.D., an additional party defendant in the wrongful death action, was the physician at Cardiovascular Consultants who analyzed C.W. Mead's EKG.

The parties do not dispute that Dr. Henderson transmitted the EKG test results to Cardiovascular Consultants by way of telephone lines from Garnett, Kansas to Kansas City, Missouri. A computer analysis and then Dr. Conn's evaluation of the test results were sent back to Dr. Henderson on the same day. The pleadings indicate that Dr. Conn analyzed the test results as being within normal limits and that Dr. Henderson then sent C.W. Mead home without further examination or monitoring, where he died within two hours.

Appellants argue that the trial court erred in finding no personal jurisdiction over Dr. Henderson and dismissing their petition against him. Appellants argue

that jurisdiction was established under the Missouri Long Arm Statute, section 506.-500, RSMo 1986, and due process considerations.

Section 506.500.1 reads, in pertinent part, as follows:

Any person or firm, whether or not a citizen or resident of this state, ... who in person or through an agent does any of the acts enumerated in this section, thereby submits ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state; ....

In passing on a motion to dismiss for lack of personal jurisdiction over a nonresident, a two step inquiry is necessary: first, whether the defendant committed one of the acts enumerated in the long arm statute; and second, whether the exercise of personal jurisdiction would violate due process. *Watlow Elec. Mfg. v. Sam Dick Industries*, 734 S.W.2d 295, 296–97 (Mo.App.1987) (citations omitted). A defendant must maintain certain minimal contacts with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 297 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

In the first step of our inquiry to determine if Missouri has personal jurisdiction over Dr. Henderson, we must determine whether Dr. Henderson committed an act within the Long Arm statute. Appellants argue that Dr. Henderson transacted business in Missouri, made a contract within

**1.** Appellants argue that the motion to dismiss should be considered on appeal as a motion for summary judgment since matters outside the pleadings were presented and not excluded by the trial court. However, to treat a motion to dismiss as a motion for summary judgment, the court must first notify both parties that it is treating the motion as one for summary judgment and give the parties opportunity to present all material pertinent to a motion for summary judgment. *Lee v. Osage Ridge Winery*, 727 S.W.2d 218, 224 (Mo.App.1987). The record does not reflect that any such notice was requested or given in the case at bar.

Missouri, and committed a tort within Missouri.

 "Transaction of any business", as used in the Missouri Long Arm Statute, must be construed broadly and may consist of a single transaction if that is the transaction sued upon. *State ex rel Metal Serv. Ctr. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984). A particular purpose of the Missouri Long Arm Statute is to confer jurisdiction over nonresidents who enter into various kinds of transactions with residents of Missouri. *Id.*

In the case at bar, the plaintiffs below and appellants here are all Kansas residents, the defendant below and respondent here, Dr. Henderson, is also a Kansas resident while defendant below, Dr. Conn, has an office in Missouri. It is alleged that Dr. Henderson practices medicine in Kansas and Dr. Conn practices medicine in Kansas and Missouri. The decedent was also a Kansas resident who was treated by Dr. Henderson in Kansas.

Appellants allege in their petition that Dr. Henderson was negligent in his treatment of C.W. Mead throughout 1988; specifically, by failing to initiate a thorough program of cardiac examination and monitoring. Appellants further allege that Dr. Henderson was negligent in his treatment of C.W. Mead on December 16, 1988, the date the EKG results were transmitted to Dr. Conn.[2]

 It is not disputed that Dr. Henderson transmitted C.W. Mead's EKG test results by telephone from Kansas to Missouri for analysis by Cardiovascular Consultants. The analysis was performed by Dr. Conn and returned to Dr. Henderson by telephone line transmission. Dr. Henderson paid Cardiovascular Consultants for analyzing the EKG test results for him.

Under a broad interpretation of "transaction of any business" within Missouri, Dr. Henderson did transact business in Missouri by sending the EKG test results to Missouri for analysis under a business relationship where he paid for said services and

stood to profit from the same. Thus, the first step of the personal jurisdiction analysis is satisfied.

It is not necessary to discuss in this opinion whether there was a contractual basis for long arm jurisdiction or whether there was a tort committed within Missouri. Appellants did not allege in their petition that Dr. Henderson entered into a contract in Missouri. Furthermore, any arguable tort by Dr. Henderson within Missouri arose out the same facts and circumstances that establish the transaction of business in Missouri by Dr. Henderson on December 16, 1988. Thus, the due process considerations are of the same nature for any alleged tort committed in Missouri as for the transaction of business within Missouri. We, therefore, turn to the second step of the analysis to determine whether the exercise of personal jurisdiction over Dr. Henderson in Missouri would violate due process.

 In a due process analysis of long arm jurisdiction the following factors are to be considered: 1) the nature and quality of the contacts with the forum state, 2) the quantity of the contacts with the forum state, 3) the relation of the cause of action to the contacts, 4) the interest of the forum state in providing a forum for its residents, and 5) the convenience to the parties. *Watlow Elec. Mfg.*, 734 S.W.2d at 297 (citations omitted). The first three factors are of primary importance and the last two are of secondary importance. *Id.*

 The nature and quality of Dr. Henderson's contacts with Missouri were minimal. Dr. Henderson did not come to Missouri or cause the appellants or the decedent C.W. Mead to come to Missouri. Dr. Henderson merely transmitted information to another doctor in Missouri for analysis. Otherwise, the entire treatment of C.W. Mead was conducted in Kansas. As for the quantity of contacts, Dr. Henderson does not dispute the representation by appellants that Dr. Henderson used the services of Cardiovascular Consultants sending EKG's for analysis more than 50 times

---

2. It is not specifically plead, but the argument appears to be that, among his other acts of malpractice, Dr. Henderson failed to relay C.W. Mead's symptoms, medical, and family history to Dr. Conn, which omissions were malpractice by Dr. Henderson.

over a period of several years. This does establish a reasonable quantity of contacts by Dr. Henderson with Missouri. However, in considering the relation of the cause of action to the contacts with Missouri, the appellants have only alleged that an EKG for C.W. Mead was sent to Missouri on one occasion, being the day of his death. Furthermore, the allegations of malpractice surrounding the EKG are in addition to appellants' allegations of malpractice by Dr. Henderson in his treatment of C.W. Mead throughout 1988. This treatment took place in Kansas, not Missouri. Thus, the cause of action has, at best, a tenuous relation with Missouri.

Although of secondary importance, the last two factors for due process consideration weigh heavily against appellants. Because appellants are not Missouri residents, the Missouri courts have no interest in providing a forum for appellants. No Missouri resident is asking the Missouri court to invoke jurisdiction. Additionally, the assumption of jurisdiction in Missouri would produce inconvenience for Dr. Henderson as well as the appellants all of whom are residents of Garnett, Kansas. Appellants do not represent that any of Dr. Henderson's treatment of C.W. Mead throughout 1988 or prior thereto was performed anywhere other than in Garnett, Kansas, except for the transmission of the EKG results to Missouri on December 16, 1988. A trial in Missouri would produce considerably more inconvenience for the parties and likely witnesses than would a trial in Kansas.

For Missouri to assume jurisdiction would violate due process and offend traditional notions of fair play and substantial justice. Because the second step of the jurisdictional analysis is not satisfied, the finding that Missouri lacked personal jurisdiction over Dr. Henderson was proper.

The judgment of the trial court is affirmed.

All concur.