**David MARLER, surviving spouse of Brandi Marler, Deceased, Appellant,**

v.

**John HIEBERT, M.D., Respondent.**

No. WD 52422.

Missouri Court of Appeals, Western District.

April 22, 1997.

Stephen Six, Overland Park, for appellant.

William Logan, Topeka, for respondent.

HANNA, Judge.

The issue on appeal is whether the Missouri court has personal jurisdiction over de-

fendant/respondent, John Hiebert, M.D. This determination involves the Missouri long-arm statute, § 506.500, RSMo (1994), and the due process clause of the Fourteenth Amendment of the United States Constitution.

The plaintiff/appellant, David Marler, is the surviving spouse of Brandi Marler. He filed a wrongful death suit against Dr. Hiebert in the Jackson County circuit court. Upon being served with process in Kansas pursuant to the long-arm statute, § 506.500, RSMo 1994, the defendant filed a motion to dismiss arguing that the court lacked personal jurisdiction. The trial court heard limited evidence which consisted of deposition testimony, affidavits, and other documents. The court concluded that Dr. Hiebert was not subject to personal jurisdiction in the state of Missouri.

The plaintiff and his wife were residents of Lawrence, Kansas. On January 17, 1994, Brandi Marler began experiencing chest discomfort and was admitted to Lawrence Memorial Hospital under the care of Dr. Hiebert, a cardiologist. Tests indicated an unstable cardiac condition which was assessed by Dr. Hiebert as a "critical coronary stenosis involving the left anterior descending distribution with unstable angina." Dr. Hiebert began a cardiac cauterization procedure during which Ms. Marler experienced cariogenic shock requiring emergency cardiac surgery. All of the pleaded acts and omissions of negligence occurred during Dr. Hiebert's treatment of Ms. Marler in Kansas. When complications arose with the cardiac cauterization, Dr. Hiebert telephoned a Kansas City, Missouri physician with Cardiovascular Consultants to make arrangements for the patient's transfer to St. Luke's Hospital because Lawrence Memorial Hospital did not have the necessary facilities to handle the case. Ms. Marler was transferred by emergency helicopter to St. Luke's Hospital in Jackson County, Missouri. Portions of her medical records were faxed to St. Luke's Hospital where she died the next day.

In 1993, Dr. Hiebert entered into an employment contract with Cardiovascular Consultants, Inc., which is a Missouri corporation having its principal place of business in Missouri. Patient services are billed through Cardiovascular Consultants' Missouri office. Dr. Hiebert's medical practice is conducted entirely in the state of Kansas, and he has never accompanied a patient to Missouri except on one occasion in 1975. He did not participate in the care of Ms. Marler after she left Lawrence Memorial Hospital.

Dr. Hiebert's letterhead lists physicians employed at Cardiovascular Consultants' Missouri office, and the Lawrence, Kansas yellow pages phone directory lists St. Luke's Hospital, Missouri physicians who are affiliated with Cardiovascular Consultants, Inc. However, the yellow page advertisements are published only in Kansas, and they list only the Kansas office address and telephone number. The Missouri offices of Cardiovascular Consultants are not mentioned in the Kansas yellow page advertisements. Cardiovascular Consultants distributes a brochure which describes its principal Missouri office but makes no mention of Dr. Hiebert or the Lawrence office.

Dr. Hiebert's income is dependent to some extent on his productivity in his Lawrence office, where he is one of four physicians. Dr. Hiebert has no policy or pattern of referring patients to Missouri, and his patients are not transferred to any specific hospital, including St. Luke's. His referral pattern does not affect his compensation. Prior to treatment at Lawrence Memorial Hospital and while consulting with Dr. Hiebert, the plaintiff and Ms. Marler insisted that, in the event of a medical emergency, Ms. Marler be transferred immediately to St. Luke's Hospital.

■ The plaintiff has the burden of showing that the court's exercise of jurisdiction is proper. *State ex rel. William Ranni Assocs., Inc. v. Hartenbach,* 742 S.W.2d 134, 137 (Mo. banc 1987). The plaintiff must show that the transaction between the parties fits into one of the subsections of the statute. *State ex rel. Metal Serv. Ctr., Inc. v. Gaertner,* 677 S.W.2d 325, 327 (Mo. banc

1984). Assuming that the plaintiff is successful, the plaintiff then must show that the assumption of long-arm jurisdiction accords with due process requirements of the Fourteenth Amendment. *Id.*

■ Our inquiry is limited to whether the exercise of personal jurisdiction over the defendant comports with the requirements imposed by the due process clause of the Fourteenth Amendment to the United States Constitution. The proper focus for analyzing the sufficiency of the defendant's contacts with the forum state is whether the contacts represent an effort by the defendant to purposefully "avail [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *see also Peabody Holding Co., Inc. v. Costain Group PLC,* 808 F.Supp. 1425, 1436 (E.D.Mo.1992).

■ A defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). This "minimum contacts" test is not susceptible to mechanical application; rather, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 141 (1978) (citing *Hanson,* 357 U.S. at 246, 78 S.Ct. at 1235, 2 L.Ed.2d at 1293 (1958)); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 485–86, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528, 549–50 (1985). The defendant's contacts with the forum state also must be purposeful and such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980); *see also Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240. In reviewing minimum contacts to satisfy the due process requirements, a court focuses on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977).

■ The plaintiff argues that Dr. Hiebert directed purposeful acts into the state of Missouri by being employed by the Missouri corporation, Cardiovascular Consultants, by transferring Ms. Marler to a Missouri physician, and by representing to Ms. Marler his relationship with St. Luke's Hospital and the Cardiovascular Consultants' physicians in Missouri to emphasize his ties with Missouri. The plaintiff's argument continues that Dr. Hiebert transacted business in Missouri and thereby subjected himself to the minimum contacts requirement by transmitting Ms. Marler's medical data by telephone and fax to the Missouri doctor at the time of referral. In other words, the plaintiff argues that Dr. Hiebert's contacts with Missouri are developed through his contractual relationship with his Missouri employer and through his representations to the Marlers about his connections with Missouri in order to persuade them to allow him to perform the procedures at the Lawrence hospital.

In *State ex rel. Pain, Anesthesia and Critical Care Servs., P.A. v. Ryan,* 728 S.W.2d 598, 603–604 (Mo.App.1987), the court held that forming a doctor-patient relationship with a Missouri resident, receiving a fee, giving treatment which produced an effect in Missouri, and forwarding medical records to Missouri did not establish the necessary minimum contacts to satisfy due process under the Fourteenth Amendment. Here, it is clear that based on the employment contract with a Missouri corporation and Dr. Hiebert's alleged assurances about his connections to Missouri, there is no showing that his tenuous connections as an employee of a Missouri entity in any manner affected the actions of the plaintiff or defendant in the treatment, referral, or relationship of the parties. There is no showing that Dr. Hiebert solicited Ms. Marler as a patient or that she was attracted to his place of business because of advertising in the yellow pages of the Lawrence phone directory.

We are concerned with "traditional notions of fair play and substantial justice." *William Ranni Assocs.*, 742 S.W.2d at 137. Factors to be considered in the due process analysis are: (1) the nature and quality of the contacts with the forum state, (2) the quantity of the contacts with the forum state, (3) the relation of the cause of action to the contacts, and of secondary importance, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience to the parties. *Mead v. Conn*, 845 S.W.2d 109, 112 (Mo.App.1993). Missouri has been less stringent in applying the required minimum contacts where a defendant has placed a product in the stream of commerce than in other areas. *Dillaplain v. Lite Indus., Inc.*, 788 S.W.2d 530, 534–35 (Mo.App.1990).

With respect to the nature, quality, and quantity of the contacts with the forum state, *Mead* is a factually similar case to the one under consideration here. In *Mead*, Dr. Henderson transmitted EKG test results to Missouri for analysis under a business relationship where he paid for the services and stood to profit from them. *Mead*, 845 S.W.2d at 112. This court held that this constituted transacting business in the state. *Id.* However, Dr. Henderson conducted his entire treatment of the deceased in Kansas, and we held that minimum contacts were not satisfied. *Id.* at 112–13. The treatment took place in Kansas, and only on the one occasion did he have contact with Missouri. *Id.* Here, Dr. Hiebert had a Missouri contract of employment which did not direct his treatment of Brandi Marler or her referral to St. Luke's Hospital. His patient did not seek him out because of his association with Cardiovascular Consultants or St. Luke's Hospital. The only evidence of the quantity of contacts was that he accompanied a patient to Missouri on one occasion many years ago.

Further, the plaintiff contends that the transmission of Ms. Marler's data to the Missouri physicians and the telephone call satisfy the necessary jurisdictional requirements. The plaintiff relies on *Mead* for his argument that Dr. Hiebert conducted business in Missouri when he transmitted the patient's medical data by telephone and facsimile to the Missouri doctor. As already discussed, in *Mead*, this court held that a Kansas physician transacted business in Missouri for purposes of the long-arm statute by transmitting the results of an EKG test by telephone to Missouri for analysis by Cardiovascular Consultants. *Mead*, 845 S.W.2d at 112. The Kansas physician sent the EKG test results to a Missouri physician, for which a fee was paid to the Missouri physician thus creating a business relationship calling for services. However, the basis for construing a transaction of business in the forum state which distinguishes *Mead* from the present case is that the telephone call in *Mead* to the Missouri physician was for advice in the proper treatment of the patient for which there was a fee charged. *Id.* Here, Dr. Hiebert was not seeking advice from a Missouri physician nor was a fee charged by the Missouri physician. Dr. Hiebert's telephone call was immediately before and relating to the transfer of Ms. Marler to Missouri for emergency care, and her records were transmitted to support the care to be given by the Missouri physician.

"[T]he sending of reports to Missouri describing completed acts performed in Kansas does not satisfy the transaction of business in Missouri subsection of the statute and the rule." *Pain, Anesthesia and Critical Care Servs.*, 728 S.W.2d at 604. Phone conversations and written correspondence were held to be insufficient contacts to justify an exercise of personal jurisdiction over a nonresident defendant in *Institutional Food Marketing Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir.1984). The use of the telephone and facsimile machine by Dr. Hiebert, under the circumstances of this case, does not amount to the transaction of business in Missouri. However, assuming *arguendo* that this act satisfied the transaction of business in Missouri to satisfy that element of § 506.500.1(1), RSMo 1994, the court in *Mead* concluded that this contact was not

enough to satisfy minimum contacts under due process requirements. *Mead,* 845 S.W.2d at 112–13.

 With respect to the final two factors, although of secondary importance, the "Missouri courts have no interest in providing a forum for [the non-resident] appellants." *Id.* at 113. Here, neither the plaintiff nor the deceased were Missouri residents at the time of the treatment. Finally, a trial in Missouri would more likely inconvenience the parties and witnesses than would a trial in Kansas.

We conclude that Dr. Hiebert's actions were not intended to have an effect in Missouri and there is no showing that he purposely availed himself of the privilege of conducting activities in Missouri. We hold that there is an insufficient basis to meet due process requirements under the Fourteenth Amendment. The jurisdictional analysis is not satisfied and the defendant cannot be subjected to personal jurisdiction in Missouri.

Judgment affirmed.

ULRICH, C.J., P.J., and SMART, J., concur.