**Edward L. LINDLEY and Sharon Lindley, Appellants,**

v.

**MIDWEST PULMONARY CONSULTANTS, P.C. and Michael E. Nelson, M.D., Respondents.**

**No. WD 59619.**

Missouri Court of Appeals, Western District.

Submitted Aug. 7, 2001.

Decided Oct. 2, 2001.

Patricia Lear-Johnson, S.W. Longan, III, Kansas City, for appellant.

Thomas P. Cartmell, Jonathan P. Kieffer, Erin K. MacArthur, Kansas City, for respondent.

Before ROBERT G. ULRICH, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, Jr., JJ.

SMART, Judge.

Edward and Sharon Lindley appeal the dismissal of their claim against Michael Nelson, M.D., a Kansas resident, for lack of personal jurisdiction. The cause of action alleged medical malpractice in the improper monitoring and management of medications. The Lindleys sued Dr. Nelson, in his individual capacity; his employer, Midwest Pulmonary Consultants, P.C., a Missouri corporation; as well as several other defendants. The Lindleys voluntarily dismissed all defendants except Nelson and Midwest Pulmonary. The trial court granted Nelson's motion to dismiss for lack of personal jurisdiction. The Lindleys

now contend on appeal that the trial court erred in dismissing Nelson from the case because Nelson transacted business in Missouri and had sufficient minimum contacts with Missouri to meet the standards of due process.

## Factual Background

The underlying medical malpractice allegations center around the plan of treatment formulated by Nelson and his employer, Midwest Pulmonary Consultants, P.C., to monitor anticoagulation before, during and after a thoracentesis for which Mr. Lindley was hospitalized on May 5, 1997. It is undisputed that Mr. Lindley's hospitalization and the acts of negligence alleged in the petition all occurred in Johnson County, Kansas. Nelson has his office in Johnson County, Kansas, and provides medical services in that county. Nelson is a resident of Johnson County, Kansas. Likewise, the Lindleys are Kansas residents.

The Lindleys' action was filed in Jackson County, Missouri. In August of 1999, Nelson filed a motion to dismiss for lack of jurisdiction. In the motion Nelson argued he is not subject to the jurisdiction of a Missouri court because all the medical services provided took place in Kansas. Nelson further stated he neither committed any acts enumerated in the Missouri long

arm statute nor does he have sufficient "minimum contacts" with Missouri to satisfy due process prerequisites. In support of the motion, Nelson filed an affidavit stating that: "(1) I am a medical doctor licensed to practice medicine in the State of Kansas [;] (2) I formerly was employed by Midwest Pulmonary Consultants, P.C. [;] (3) During the time that I was employed by Midwest Pulmonary Consultants, P.C. [,] I never provided any medical care or treatment in the State of Missouri."

The Lindleys filed suggestions in opposition arguing personal jurisdiction exists over Nelson because he committed certain acts (i .e. transacting business) that bring him under the Missouri long arm statute, § 506.500 RSMo. The Lindleys further argued Nelson has sufficient minimum contacts for Missouri to exercise jurisdiction regardless of whether or not he committed any act enumerated in the long arm statute.[1] In support of their position, Mr. Lindley filed an affidavit stating that: "(1) The bills for medical services received by Edward Lindley from Defendant Dr. Michael Nelson were issued from the State of Missouri[;] (2) Edward Lindley paid Defendant Nelson by issuing payment to Defendant Nelson in the State of Missouri[;] (3) Edward Lindley's checks to pay the medical bills from Defendant Nelson were

---

1. This argument appears to be abandoned on this appeal. Traditionally, jurisdiction was exercised over corporations by service upon an agent in the forum state. *State ex rel. K–Mart Corp. v. Holliger*, 986 S.W.2d 165, 167(Mo. banc 1999). With *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the jurisdictional emphasis shifted from "Is the defendant there?" to "Is it fair?". *K–Mart* at 167. As a consequence, long-arm statutes were adopted by states. The "long-arm statutes, as the name implies, are intended to expand the reach of the law of the state to authorize jurisdiction over foreign corporations that are not necessarily authorized to do business in the state

but whose activities justify personal jurisdiction." *Id.* at 168. In *K–Mart*, "there [was] no need for a 'long-arm' to reach K–Mart outside of Missouri, because K–Mart [had] a registered agent in Missouri." *Id.* In other words, by having a registered agent in Missouri, K–Mart's presence was known. Thus, the long-arm was not needed. In the instant case, however, Nelson was sued as an individual. We are provided no authority for the proposition that being licensed to practice medicine in a state during a former medical residency constitutes a continuing "presence" in a state long after the physician has moved to another state. In any event, that issue is not before us because the argument is not made.

deposited in the State of Missouri." The Lindleys also filed the affidavit of their attorney stating that Nelson was and continues to be licensed to practice medicine in the State of Missouri. They attached a copy of a fax from the Missouri Board of Healing Arts, a copy of a bill from Midwest Pulmonary Consultants P.C., and a copy of a cancelled check which was endorsed "Pay to the order of Commerce Bank NA Kansas City Mo 64141 [account number] for deposit only Midwest Pulmonary Consul. P.C. S. Learner, V. Lem. B. Schwartz, R. Hill, M. Nelson [followed by the tax number] [2].

### Standard Of Review

In their sole point on appeal, the Lindleys argue the trial court erred in dismissing their claims against Nelson because the court did have personal jurisdiction over Nelson under § 506.500 and that he had sufficient minimum contacts with Missouri to meet the standards of due process. The Lindleys argue that they showed facts which demonstrated personal jurisdiction in that Nelson was a physician licensed in Missouri, was at the relevant times an employee of a Missouri corporation, billed his services from Missouri, and payment was made to Missouri.

 "When a defendant raises the issue of lack of personal jurisdiction, the burden shifts to the plaintiff to make a prima facie showing of jurisdiction by showing: (1) that the action arose out of an activity covered by the long-arm statute, section 506.500.4 and (2) that defendant had sufficient minimum contacts with the forum state to satisfy due process requirements in order to withstand the motion." *Conway v. Royalite Plastics, Ltd.,* 12 S.W.3d 314, 318 (Mo. banc.2000) (citing *Chromalloy American Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 4 (Mo. banc. 1997)). When the motion is based on facts not appearing on the record, as is the case here, "the trial court may hear it on affidavits presented by the parties, or the court may direct that the matter be heard wholly or partly on oral testimony or deposition." *Id. (citing Chromalloy* and Rule 55.28). "The proper function of an affidavit is to state facts, not conclusions." *Id.* (citations omitted).

When affidavits are presented, the trial court may believe or disbelieve any statements made within those affidavits. It is within the sole discretion of the trial court to make such factual determinations. [The appellate court] must affirm the trial court's ruling regarding jurisdiction if the affidavits submitted by the defendants in support of their motions to dismiss show they did not commit any act sufficient to invoke the jurisdictional provisions of the Missouri [l]ong [a]rm [s]tatute.

*Chromalloy,* 955 S.W.2d at 4.[3]

 "This standard of review does not convert the motion to dismiss into a

---

**2.** In the amended brief filed by the Lindleys in the first appeal (that Respondent has made part of his supplemental legal file) there is an Exhibit "F" which appears to be the deposition of Dr. Nelson. On page nine of the deposition (p.70 of the supplemental legal file) Nelson testifies that in issuing a bill he would turn an account of the charges to the office manger in Kansas and from that point on he does not know how the billing proceeded. It is impossible to tell from the record if this Exhibit "F" was part of the suggestions in opposition to the motion to dismiss or not. The suggestions in opposition do not reference an Exhibit "F."

**3.** Compare *Shouse v. RFB Const. Co.,* 10 S.W.3d 189, 192 (Mo.App.1999), which cited Rule 55.27 rather than Rule 55.28. In *Shouse* the court stated that pursuant to Rule 55.27 the trial court could treat a motion to dismiss as a summary judgment when information outside the pleadings is presented and not excluded by the court, but notice to all parties

motion for summary judgment as 'the trial court's inquiry is limited to an examination of the petition on its face and the supporting affidavits to determine the limited question of personal jurisdiction.' " *Capitol Indem. Corp. v. Citizens Nat'l Bank*, 8 S.W.3d 893, 898 (Mo.App.2000) (quoting *Chromalloy*, 955 S.W.2d at 3, n. 3.). "The merits of the underlying action are not considered." *Id.* To demonstrate that a cause of action arose out of an activity covered by the long arm statute, however, "a plaintiff must make a prima facie showing of the validity of its claim. A plaintiff need not prove all of the elements that form the basis of the defendant's liability, but must show that acts contemplated by the statute took place." *Conway*, 12 S.W.3d at 318 (citations omitted).

■■■ The Missouri long-arm statue in relevant part states:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(3) The commission of a tortious act within this state;.....

3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Section 506.500 RSMo (1994). The Lindleys' cause of action was based upon medical malpractice in Kansas, not a transaction within the State of Missouri. "Normally in a medical malpractice case, a plaintiff is required to establish: (1) an act or omission by the defendant that was not in keeping with the degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant's profession; and (2) that such negligence or omission caused the plaintiff's injury." *Zumwalt v. Koreckij*, 24 S.W.3d 166, 168 (Mo.App. 2000). In this case it is undisputed that all the decisions concerning Mr. Lindley's medical treatment were made in Johnson County, Kansas. The only allegation of a Missouri contact in providing care is that Nelson's employer was a Missouri corporation. Thus, the Lindleys fail to make a prima facie case that cause of action of medical malpractice arose from a tort within the State of Missouri.

by the court that it will be treated as a summary judgment is required. Since the trial court failed to make such a notice the appellate court treated the trial court's order as a dismissal on the pleadings, not summary judgment. *Id. Accord, Sloan–Roberts v. Morse Chevrolet, Inc.*, 44 S.W.3d 402, 406 (Mo.App. 2001). The difference between applying Rule 55.27 and Rule 55.28 when jurisdiction is at issue, is not without significance. If the motion is treated as a dismissal on the pleadings under Rule 55.27 then, as was properly stated in *Shouse*, all facts alleged in the petition are deemed true and the plaintiff is given the benefit of every reasonable intendment. By

proceeding under Rule 55.28 the Missouri Supreme Court in *Conway* and *Chromalloy* has indicated that (1) the trial court may believe or disbelieve any statement in the affidavits; (2) it is within the sole discretion of the trial court to make factual determinations; (3) the appellate court must affirm the trial court's ruling regarding jurisdiction if the defendant's affidavits support their motion to dismiss (thus the shift in the burden of proof). Also implicit in the trial court's discretion to make factual determinations, is that the appellate court would be able to rely on Rule 73.01 in its review.

■ Nelson does not directly argue that the Lindleys failed to make a prima facie case of malpractice in Missouri. Instead he argues that there was no transaction of business in the state. Likewise, the trial court did not state any specific grounds on which he based his order of dismissal. As a consequence, "we [must] presume dismissal was based upon one of the grounds presented, and will affirm the dismissal if any ground can sustain the court's action." *Shouse*, 10 S.W.3d 189, 193 (Mo.App.1999) (citing to *Wenthe v. Willis Corroon Corp.*, 932 S.W.2d 791, 793–94 (Mo.App.1996)).

Missouri courts have consistently held that the requirement of "transaction of any business within this state" must be construed broadly and may consist of a single transaction if that is the transaction sued upon. *State ex rel. Metal Serv. Ctr. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc. 1984). We examine whether Nelson was transacting business in the state of Missouri when he provided care to Mr. Lindley. In support of his argument that he was not transacting business within the State of Missouri, Nelson refers this court to two cases, *State ex rel. Pain Anesthesia and Critical Care Services, P.A. v. Ryan*, 728 S.W.2d 598 (Mo.App.1987) and *Marler v. Hiebert*, 943 S.W.2d 853 (Mo.App.1997).

In *Pain, Anesthesia and Critical Care Services*, a child was born in Missouri affected with hydrocephalus, which required the installation a shunt to drain excessive fluid from the child's brain. After treatment in Missouri, a series of surgeries occurred on the child in Wichita, Kansas. During one of the surgeries, it was alleged, the child experienced heart failure, resulting in permanent brain damage. 728 S.W.2d at 600. Plaintiff brought suit in Missouri against the defendants. *Id.* In rejecting the agrument that Missouri had

jurisdiction over the physicians, the court stated:

> It is clear that the treatment furnished [the child] in Kansas was rendered not in concert or conjunction with treatment he had received in Missouri, despite the unverified conclusionary allegations of the amendment to plaintiffs' petition. The fact that he was in Kansas when the shunt failed was pure happenstance. The fee paid to the Kansas defendants was for services rendered in Kansas and not for consultation with Missouri doctors or for the sending of reports of what had occurred in Kansas to those who might be treating [the child] in the future. Nothing allegedly done in Kansas was intended to have an effect in Missouri.

*Id.* at 603 (citations omitted). The court further stated "[l]ikewise, the sending of reports to Missouri describing completed acts performed in Kansas does not satisfy the transaction of business in Missouri subsection of the statue and the rule." *Id.* at 604.[4]

In the instant case, the Lindleys argue, as part of their basis for Missouri jurisdiction, that the fee paid was paid in Missouri. They fail to note that the fee was paid to a corporation and not to Nelson. That fee was for services rendered in Kansas, not Missouri, and not for consultations with Missouri doctors who might be treating Mr. Lindley in the future. Nothing done in Kansas was intended to have an effect in Missouri.

In *Marler*, the underlying cause of action was for wrongful death. The decedent had began suffering chest pains and was admitted to Lawrence Memorial Hospital under the care of Dr. Hiebert, a cardiologist. Tests indicated a "critical

---

4. Rule 54.06, authorizing out-of-state service of process.

coronary stenosis." Dr. Hiebert began a cardiac cauterization procedure. In that procedure the decedent experienced cardiogenic shock requiring emergency cardiac surgery. *Marler*, 943 S.W.2d at 855. When complications arose, Hiebert called another physician with Cardiovascular Consultants, Inc., (also Hiebert's employer) to make arrangements for the transfer of the patient to St. Luke's Hospital in Kansas City. Portions of her medical records were faxed to St. Luke's, where the patient died the next day. *Id.*

Cardiovascular Consultants, Inc., was a Missouri corporation with its principal place of business in Missouri. Patient services were billed though Cardiovascular Consultants' Missouri office. Dr. Hiebert's medical practice was conducted entirely in the State of Kansas. Hiebert's letterhead lists physicians employed at Cardiovascular Consultants' Missouri office. The yellow pages published only in Kansas listed only the Kansas office address. *Id.* Hiebert had no policy or pattern of referring patients to Missouri, and his patients are not transferred to any specific hospital. *Id.*

In finding that Hiebert's actions did not constitute transacting business in Missouri this court stated:

> Here, it is clear that based on the employment contract with a Missouri corporation and Dr. Hiebert's alleged assurances about his connections to Missouri, there is no showing that his tenuous connections as an employee of a Missouri entity in any manner affected the actions of the plaintiff or defendant in the treatment, referral, or relationship of the parties.

*Id.* at 856. In the instant case the Lindleys have alleged that Nelson's employment with a Missouri corporation, and the fee collection through that corporation, constituted conducting business in Missouri. The Lindleys, however, assert no facts demonstrating that Nelson's connections as an employee of a Missouri entity affected their actions or those of Nelson in the care and treatment of Mr. Lindley. Similarly, the mere fact that Nelson had a Missouri medical license did not affect the care provided to Mr. Lindley in any way or show that Mr. Lindley chose Nelson as his care provider due to his ability to practice in this state. Further, the Lindleys do not make any allegation that Nelson consulted with any Missouri physician in the care and treatment of Mr. Lindley.

The facts of *Mead v. Conn*, 845 S.W.2d 109 (Mo.App.1993) are also distinguishable from the instant case. In *Mead*, Dr. Henderson and other defendants were sued for wrongful death. The decedent and the plaintiffs, as well as Henderson, were residents of Kansas. Henderson practiced medicine in Kansas while Dr. Conn, a co-defendant, practiced in both Missouri and Kansas. *Id.* at 112. Henderson had cared for the decedent for some time prior to the critical incident. Decedent presented himself at Dr. Henderson's office with severe chest pain and pains radiating through his arms. Henderson examined the decedent and performed an electrocardiogram (EKG). *Id.* Henderson transmitted the results of the EKG to Cardiovascular Consultants, in Kansas City, Missouri, where Dr. Conn ran a computer analysis, evaluated the results and sent his findings back to Henderson, all by the way of telephone lines between Kansas City, Missouri and Garnett, Kansas. *Id.* Finding that Henderson did transact business in the state, this court stated: "[u]nder a broad interpretation of 'transaction of any business' within Missouri, Dr. Henderson did transact business in Missouri by sending the EKG test results to Missouri for analysis under a business relationship where he

paid for said services and stood to profit from the same." *Id.* at 112. *Mead* is different from this case in that the engagement of a Missouri physician for the interpretation of the EKG test in Missouri is a form of consultation, for treatment purposes, with a physician in Missouri. In this case, in contrast, there is no allegation of consultation with any Missouri physician.

In support of their contention that Nelson was transacting business in this state, the Lindleys refer this court to the cases of *Schilling v. Human Support Services,* 978 S.W.2d 368 (Mo.App.1998) and *Sloan–Roberts v. Morse Chevrolet, Inc.,* 44 S.W.3d 402 (Mo.App.2001). In *Schilling* the plaintiffs sued Human Support Services (HSS), an Illinois not-for-profit corporation, for personal injuries when the plaintiff fell from a wheelchair lift while boarding a bus. Plaintiffs also sued a Missouri corporation, which had repaired HSS buses and lifts numerous times including two repairs on the lift and bus in question. *Schilling,* 978 S.W.2d at 370. The plaintiff's action against HSS alleged that HSS was negligent in several ways including "failing to properly inspect and/or maintain the SAF–T–LIFT on [the bus] so as to prevent injury." *Id.* HSS entered a special and limited appearance to contest personal jurisdiction, claiming it did not engage in the activities set forth in Missouri's long-arm statute. *Id.* In finding personal jurisdiction existed and the activities of HSS arose out of the activities enumerated in the long-arm statute, the court noted that the allegations of defective maintenance were related to repairs performed in St. Louis. *Id.* at 371. The key to the decision in *Schilling* was the repair of the bus and lift in Missouri. In the instant case, the crux of the Lindley's cause of action is for medical malpractice. All of the alleged acts of malpractice took place in Kansas. Thus, *Schilling* is distinguishable from the case before the bar.

In *Sloan–Roberts,* suit was brought in Jackson County by a Kansas car buyer against the seller, a Kansas car dealership which was not registered to conduct business in Missouri. The petition alleged violations of the Missouri Merchandising Practices Act, Kansas Consumer Protection Act, fraud, breaches of express and implied warranties, negligence, negligent misrepresentation, and violation of the Kansas Title History Search Disclosure Statute. *Sloan–Roberts,* 44 S.W.3d at 405. The record indicated respondent had purchased the vehicle in Missouri, that respondent advertised in the *Kansas City Star,* that respondent regularly sold to Missouri customers, and that respondent had substantial contractual relations with the General Motors Acceptance Corporation (GMAC) in Missouri (including the financing of its car sales).

The trial court dismissed respondent for lack of personal jurisdiction. *Id.* In reversing the trial court's dismissal, this court stated: "though both the Appellant and Respondent are Kansas residents and the parties' business relationship arose in Kansas, Respondent's purchase of the defective automobile in Missouri triggered the long-arm statute because this cause of action arose from that purchase." *Id.* at 407. Thus, the original purchase of the van in Missouri constituted the transaction of business in Missouri. In the instant case, in contrast, there was no action in Missouri which became the basis of the lawsuit.

"To subject a non-resident defendant to the long-arm jurisdiction of this state, the plaintiff must plead and prove two elements: first, that the suit arose from any of the activities enumerated in the long arm statute, § 506.500, RSMo 1994; and second, that defendant has sufficient mini-

mum contacts with Missouri to satisfy due process requirements." *Capitol*, 8 S.W.3d at 899. Here, the Lindleys' claim for medical malpractice arose from care provided only in Kansas by a Kansas caregiver. The Lindleys failed to make a *prima facie* case demonstrating that the suit arose from any of the activities enumerated in the long-arm statute. We need not address the issue of whether Nelson maintains sufficient minimum contacts with Missouri to satisfy due process requirements.[5] We affirm the trial court's dismissal of the claims against Dr. Nelson.

ULRICH and LOWENSTEIN, JJ., concur.

---

**5.** Although we need not address the due process issue here, we deem it pertinent in this context to once again mention the case of *Mead v. Conn*, 845 S.W.2d 109 (Mo.App. 1993), already discussed above on the issue of transaction of business. In *Mead*, the court, after finding the transaction of business in Missouri because of the EKG consultation in Missouri, went on to find that, even though Henderson had a history of transmitting results to Missouri for interpretation (at least fifty in the several years prior to the suit), the contacts were minimal and not of the nature and quality as to meet the due process analysis of the long arm jurisdiction. The court therefore affirmed the dismissal based upon lack of personal jurisdiction. *Id.* at 112–13.