

# Missouri Court of Appeals
## Southern District

In Division

M. SCOTT MONTGOMERY,           )
                               )
    Appellant,            )   No. SD38183
                               )
v.                             )
                               )
SHERRI HOPPER,                 )
                               )
    Respondent.           )

And

RUSSELL TURNER,                )
                               )
    Appellant,            )   No. SD38184
                               )
v.                             )
                               )
SHERRI HOPPER,                 )
                               )
    Respondent.           )   **Filed: March 21, 2024**

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Joshua B. Christensen, Judge

**<u>AFFIRMED</u>**

This appeal follows the circuit court's judgment dismissing Appellants Scott

Montgomery's and Russell Turner's (collectively, "Appellants") petitions for lack of

personal jurisdiction over Respondent Sherri Hopper ("Respondent").[1]  Appellants each

filed one-count petitions against Respondent, a Colorado resident and Colorado-

licensed real estate agent, alleging libel for statements Respondent made to a Colorado

association of realtors[2] in response to an ethics complaint filed against her by Appellants

in Colorado.[3]  Respondent filed both an affidavit and a motion to dismiss Appellants'

petitions for lack of personal jurisdiction.[4]  After a hearing, the circuit court granted

Respondent's motions, finding Appellants failed to demonstrate a statutory basis for

jurisdiction in Missouri based on section 506.500, the long-arm statute.  Specifically,

the circuit court found:

> According to [Appellants], [Respondent's] response to these allegations
> were made to that Board of Realtors, with copies of that response also
> going to [Appellants.] . . . Even leaving aside the other questions this raises
> (whether such statements would be legally privileged, and whether such
> statements constitute "publication" when sent to the very plaintiffs who
> initiated the complaints to begin with), these statements made in Colorado
> to a Colorado entity with copies sent to Missouri do not constitute the
> commission of a tortious act in this state.

---

[1] While Montgomery and Turner filed separate petitions and the trial court entered separate judgments,
the petitions are based on the same allegations and are nearly identical.  Because their appeals raised
identical points and relied on identical arguments, we consolidated the appeals for purposes of this
opinion.

[2] The alleged libelous statements were made to the Pikes Peak Association of Realtors.

[3] Both Appellants sought leave to file a second amended petition adding a claim for abuse of process, but
those motions were denied as moot.

[4] The motion to dismiss also alleged Appellants' petitions should be dismissed because they were barred
by the statute of limitation.  Colorado has a one-year statute of limitation for libel claims.  *See* Col. Rev.
Stat. Section 13-80-103(1)(a).  Appellants' petitions for libel were filed more than one year after the
alleged libelous statements were made.  Under Missouri's borrowing statute, section 516.190, "[w]henever
a cause of action has been fully barred by the laws of the state, territory or country in which it originated,
said bar shall be a complete defense to any action thereon, brought in any of the courts of this state."  "The
purpose of a borrowing statute is primarily to prevent a plaintiff from forum shopping for a statute of
limitations. The statute prevents a plaintiff from gaining more time to bring an action merely by suing in a
forum other than where the cause of action accrued."  **Natalini v. Little**, 185 S.W.3d 239, 246 (Mo. App.
S.D. 2006) (quoting **Patch v. Playboy Enter., Inc.**, 652 F.2d 754, 757 (8th Cir. 1981)).  While we do
not decide whether Appellants' libel claim was barred by the statute of limitation, we agree with
Respondent that Appellants' decisions to file the cases in Missouri smells of forum shopping.  Allowing
the cases to proceed in Missouri would defeat the purpose of the borrowing statute, section 516.190.  All
statutory references are to RSMo (2016) unless otherwise indicated

In a single point, Appellants argue the circuit court erred in dismissing their petitions against Respondent pursuant to section 506.500, because Respondent: (1) transacted business in Missouri, (2) entered into contracts in Missouri, and (3) committed tortious acts in Missouri. Because Appellants fail to make a *prima facie* showing that Respondent committed any act contemplated by the long-arm statute in Missouri, we affirm the circuit court's judgments dismissing Appellants' petitions.

## Standard of Review

Whether the trial court erred in dismissing a petition for lack of personal jurisdiction is a question of law, which, on appeal, we review *de novo*. *See **Bryant v. Smith Interior Design Group, Inc.***, 310 S.W.3d 227, 231 (Mo. banc 2010). "When a defendant raises the issue of personal jurisdiction in a motion to dismiss, the plaintiff has the burden to show that the trial court's exercise of jurisdiction is proper." ***Babb v. Bartlett***, 638 S.W.3d 97, 104 (Mo. App. E.D. 2021) (quoting ***Consolidated Elec. & Mechs., Inc. v. Schuerman***, 185 S.W.3d 773, 775 (Mo. App. E.D. 2006)).

When a motion to dismiss for lack of jurisdiction is based on facts not appearing in the record, "the trial court may hear it on affidavits presented by the parties, or the court may direct that the matter be heard wholly or partly on oral testimony or deposition." *Id.* (quoting ***Lindley v. Midwest Pulmonary Consultants, P.C.***, 55 S.W.3d 906, 909 (Mo. App. W.D. 2001)). If affidavits are presented, the circuit court may believe or disbelieve any statements made within those affidavits. *Id.* We "must affirm the trial court's ruling regarding jurisdiction if the affidavits submitted by the defendants in support of their motions to dismiss show they did not commit any act sufficient to invoke the jurisdictional provisions of the Missouri [l]ong [a]rm [s]tatute." *Id.* (quoting ***Lindley***, 55 S.W.3d at 909).

## Facts and Procedural Background

Appellants filed amended petitions for libel against Respondent. These petitions alleged, generally, that Appellants retained Respondent to serve as a real estate buyer's agent in Colorado, and Respondent "breached her fiduciary duties of loyalty, disclosure, and obedience" by purchasing certain real estate located in Colorado "out from underneath [Appellants] after [Appellants] agreed in writing in Missouri to purchase" the real estate. Appellants then filed an ethics complaint against Respondent with the Pikes Peak Association of Realtors, which Respondent responded to on September 17, 2021.[5] Respondent's reply to Appellants' ethics complaint stated Appellants harassed and bullied her. Appellants alleged that Respondent's statements to the Pikes Peak Association of Realtors were false and constituted libel and damaged Appellants in Missouri.[6]

---

[5] Appellants' petitions omitted allegations that Respondent's statements were made in response to an ethics complaint Appellants' filed against Respondent in Colorado. In fact, Appellants' petitions transition from general allegations to libel allegations so abruptly that it is unclear from the face of the petitions who Respondent allegedly made the statements to, or where the statements were made. However, Respondent's affidavit clarified that her alleged libelous statements were those she made to the Pikes Peak Association of Realtors in Colorado in response to Appellants' complaints.

[6] Specifically, Appellants petitions alleged:

> 34. On September 17, 2021, regarding [Appellants], [Respondent] stated in writing as follows, "All of the above alleged claims are false and there is not a shred of evidence that can be produced by [Turner] or his counsel that would prove otherwise. [Appellants'] behavior and continued harassment . . . do nothing more than demonstrate their attempt to bully, threaten, coerce and defame [Respondent]."

> 35. Also on September 17, 2021, regarding Plaintiff, [Respondent] stated in writing as follows: "True, [Respondent] ceased all communications due to the fact that [Appellants] began to harass, threaten and yell at [Respondent] verbally along with sending aggressive text messages that threaten legal action. [Respondent] chose not to subject herself to their increasingly hostile behavior that she believed could escalate into violence if she were to engage. "

These allegations appear in paragraphs 33 and 34 of Turner's amended petition and paragraphs 34 and 35 of Montgomery's amended petition. While the numbers in the amended petitions are different, the allegations are identical.

In response to Appellants' petitions, Respondent filed an affidavit and motions to dismiss for lack of personal jurisdiction. Respondent's affidavit averred, among other things, that she was a resident of Colorado and a real estate agent licensed only in Colorado, that she met Turner in 2016 when he stayed at an Airbnb in Colorado and during that stay in Colorado, Turner inquired about purchasing property in Colorado owned by Green Mountain Falls Spruce, LLC.

Respondent further averred:

5.      Through that process, [Turner] learned I was a real estate agent in Colorado. As required by law, in conjunction with the real estate purchase above, [Turner], on behalf of his entity, executed a brokerage disclosure defining our working relationship, which specifically stated I was not the agent of the buyer. *See* Exhibit B. Broker Disclosure (noting "THIS IS NOT A CONTRACT").

6.      Following, [Turner] asked I send him information on residential properties for sale in the Green Mountain Falls, Colorado area. To effectuate this request, I put his email address into the MLS system, which periodically generated a list of residential properties automatically delivered to him via electronic mail. Over the years, [Turner] contacted me with questions about properties for sale in Colorado, but he never signed any agreement with me nor did I ever serve as his real estate agent or broker.

7.      In 2021, [Turner] contacted me asking for my assistance. He had been negotiating with a property owner prior to her listing her property on the market. Those negotiations had broken down, and the property owner had moved forward with listing the property. [Turner] did not have the capital to purchase the property and told me he was going to have his attorney, [Montgomery], purchase it for him. [Appellants] were in Colorado together during this time. For purposes of making the offer to purchase the property, [Montgomery] was asked to execute an Exclusive Right to Buy Listing Contract . . . —he never signed or accepted this contract. *See* Exhibit C, Exclusive Right to Buy Listing Contract. [Montgomery], as an agent for Needle's Eye, LLC, signed an offer for the property, but the seller did not accept. *See* Exhibit D, March 20, 2021 Offer.

8.      On July 21, 2021, [Montgomery], on behalf of [Turner], filed an Ethics Complaint against [Respondent] with the Colorado Association of Realtors, located in Englewood, Colorado, and/or the Pikes Peak

5

Association of Realtors, located in Colorado Springs, Colorado related to a third property, which [Appellants] refer to as the Lakeside Cottages. *See* Exhibit E, Ethics Complaint.

9. On September 17, 2021, [Respondent], or someone on my behalf, filed a Reply to this Ethics Complaint. *See* Exhibit F, Reply.

10. [Turner] has also filed a lawsuit against [Respondent] in Colorado related to the Lakeside Cottages.

The circuit court conducted a hearing on Respondent's motions to dismiss for lack of personal jurisdiction. At the hearing, Appellants argued the "third party" that received Respondent's alleged libelous statements in Missouri were Appellants and the staff at Montgomery's law firm. Montgomery further argued he was damaged in Missouri because that is where he practices law. Appellants acknowledged they filed the ethics complaint and a lawsuit in Colorado for Respondent's alleged breach of fiduciary duties. Following the hearing, the circuit court granted Respondent's motions to dismiss. In so doing, the circuit court found Appellants did not demonstrate that Missouri's long-arm statute was satisfied. Specifically, it found Respondent was not engaged in transacting any business in Missouri. "To the extent [Respondent] transacted any business, it was in Colorado." Furthermore, of the purported contracts asserted by Appellants, "not all even constitute fully offered-and-accepted contracts, and to the extent they do, they do not confer personal jurisdiction because [Appellants'] claims do not 'arise from' those contracts." The circuit court also determined Appellants failed to show the "commission of a tortious act within this state" because the allegedly libelous statements were made by Respondent in the course of responding to allegations Appellants made against her in an ethics complaint to a Colorado entity.

**Discussion**

Appellants argue the circuit court erred in dismissing their petitions for lack of personal jurisdiction because Respondent is subject to jurisdiction in Missouri pursuant to section 506.500, the long-arm statute, in that Respondent transacted business in Missouri, entered into contracts in Missouri, and committed tortious acts in Missouri. This argument is without merit because Appellants fail to make a *prima facie* showing that their libel actions arose from the transaction of business or the making of a contract in Missouri or that Respondent's alleged libel was committed in Missouri.

"A court evaluates personal jurisdiction by considering the allegations contained in the pleadings to determine whether, if taken as true, they establish facts adequate to invoke Missouri's long-arm statute and support a finding of minimum contacts with Missouri sufficient to satisfy due process." *State ex rel. Cedar Crest Apartments, LLC v. Grate*, 577 S.W.3d 490, 496 n.5 (Mo. banc 2019),  Thus, we apply a two-step analysis. *Babb*, 638 S.W.3d at 105.  First, we determine whether a plaintiff pleaded and proved "the suit *arose from* any of the activities enumerated in [s]ection 506.500[,]" the long-arm statute. *Id.*  While a plaintiff need not prove all of the elements that form the basis of the defendant's liability, he or she must make a *prima facie* showing of the validity of the claim by showing that acts contemplated by the statute took place. *Id.* at 106.  If the first step is satisfied, we then determine whether plaintiff pleaded and proved the defendant had sufficient minimum contacts with Missouri to satisfy due process.[7] *Id.* at 105.  We only proceed to the second step if the first step is satisfied. *Id.* at 106.

---

[7] If a defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice[,]" then due process is

Missouri's long-arm statute is found in section 506.500.[8]  This section provides, in pertinent part:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this state;
>
> (2) The making of any contract within this state;
>
> (3) The commission of a tortious act within this state[.]

§ 506.500.1.  "Only causes of action *arising from* acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."  § 506.500.3 (emphasis added).

## (1) Transacting Business in Missouri and (2) the Making of Any Contract in Missouri

Appellants argue the circuit court had personal jurisdiction over Respondent because:  (1) Respondent transacted business in Missouri by sending communications to Appellants, who were in Missouri, and (2) by sending a contract to be a buyer's agent for Appellants, who were in Missouri, and presenting Appellants with offers to purchase property in Colorado, which were received in Missouri.  This argument fails for at least two reasons.

---

satisfied.  ***International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement***, 326 U.S. 310, 316 (1945).

[8] "The General Assembly's intent in passing the long-arm statute 'was to extend the jurisdiction of the courts of this state over nonresident defendants to the extent permissible under the due process clause of the fourteenth amendment of the constitution of the United States.'"  ***Hollinger v. Sifers***, 122 S.W.3d 112, 115 (Mo. App. W.D. 2003) (quoting ***State ex rel. K-Mart Corp. v. Holliger****,* 986 S.W.2d 165, 167-68 (Mo. banc 1999)).

First, Appellants' petitions do not allege any actual contract *made* in this state. Appellants argue "[Respondent] has made at least two contracts in Missouri by drafting the contracts and sending them into Missouri for execution in Missouri." But we see no allegation those "contracts" were ever actually accepted, let alone accepted in Missouri.[9] The closest Appellants allege to a contract being made in Missouri is "[i]n March 2021, [Respondent] sent a contract into Missouri to be executed establishing that [Respondent] would be acting as a buyer's agent for Plaintiff[.]" But Appellants do not allege this "contract" was accepted by the parties in Missouri nor does the exhibit attached to the petitions show it was signed by any party in Missouri. The other "contract" is a proposed offer to buy certain real estate in Colorado signed by Montgomery on behalf of Appellants' LLC in March 2021.[10] While it is signed by Respondent in her capacity as a broker, it expressly acknowledges she is "not a party to the Contract" and this proposed contract (*i.e.*, an offer) was never accepted by the sellers because Appellants were "outbid on this property." Thus, this offer does not constitute the making of a contract within Missouri under our long-arm statute. "For purposes of the long-arm statute, a contract is made where acceptance occurs." ***Copeland v. WRBM, LLC***, 679 S.W.3d 30, 40 (Mo. App. E.D. 2023). Additionally, Respondent's affidavit alleged no agreements were ever signed by all parties. "The circuit court can believe or disbelieve any statement in the affidavits, and factual determinations are

---

[9] A contract does not exist unless the offer has been accepted by the parties. ***Pride v. Lewis***, 179 S.W.3d 375, 379 (Mo. App. W.D. 2005).

[10] This offer was for a different Colorado property than that which Appellants' allege was purchased by Respondent "out from underneath them." Appellants' brief, from what we can tell, does not claim the offer to purchase the property in Colorado that was later purchased by Respondent was the making of a contract in this state.

9

within the sole discretion of the circuit court." *Id.* at 37. The circuit court was free to believe Respondent's affidavit.

Second, Appellants' libel claims do not "arise from" any business transaction or contract in Missouri. The "transaction of business" that a plaintiff claims confers jurisdiction over a nonresident defendant must be "the transaction that gives rise to the suit." *Id.* at 39 (internal citation omitted).

> [F]or purposes of determining whether a claim "arose from" a contract relied upon as the basis for personal jurisdiction under § 506.500.1(2), the plaintiff must allege and prove something *more* than that the events giving rise to the claims asserted would not have occurred absent the existence of the contract(s) at issue[.]

*Babb*, 638 S.W.3d at 109 (emphasis added). Appellants' libel claims do not arise from the two "contracts" Appellants attached to their petitions.[11] They arise from statements made by Respondent, a Colorado real estate agent, to the Pikes Peak Association of Realtors, a Colorado entity, in response to an ethics complaint filed by Appellants in Colorado. Appellants do not allege any cause of action arising from any specific contract or business transaction in Missouri. While Appellants' libel claims do have a connection to Respondent's real estate services in Colorado, Appellants have failed to make a *prima*

---

[11] Appellants also alleged Respondent "sent at least 84 emails into Missouri to [Turner] and/or [Montgomery] over the course of approximately 6 years in order to promote her business and advertise properties for sale where she would earn a commission." According to Appellants, these communications are business transactions. Respondent's affidavit averred Turner asked her to send him information on residential properties for sale in the Green Mountain Falls, Colorado area. Respondent put Turner's email address into the MLS system, which periodically generated a list of residential properties that were then automatically delivered to him via electronic mail. Over the years, Turner had contacted Respondent with questions about properties for sale in Colorado. While it is true we broadly construe the "transaction of any business within the state[,]" we do not construe it so broadly to encompass the mere use of mail or telephone communications. *Capitol Indem. Corp. v. Citizens Nat. Bank of Fort Scott, N.A.*, 8 S.W.3d 893, 903-04 (Mo. App. W.D. 2000). Nor do we construe it so broadly to include automated MLS property listings that were sent to a plaintiff at his request.

*facie* showing that the claims "arose from" any business transaction or contract in Missouri.

### (3) The Commission of a Tortious Act within Missouri

Finally, Appellants argue the trial court erred in dismissing their petitions because Respondent satisfied section 506.500(3), the tortious act provision. This argument is also unavailing.

"In order to rely upon the 'tortious act' provision of the long-arm statute, [the plaintiff is] required to show that the [d]efendants committed a tort in Missouri and that the action caused [the plaintiff] injuries." *Hollinger*, 122 S.W.3d at 116. "The defendant must have set in motion some course of action which was deliberately designed to move into Missouri and injure the plaintiff." *Capitol Indem. Corp.*, 8 S.W.3d at 903. While a plaintiff need not prove all the elements of his or her claim, a plaintiff must prove "that acts contemplated by the statute took place within the state." *Hollinger*, 122 S.W.3d at 116 (internal citation omitted). If a plaintiff properly pleads the defendant "committed a tort in Missouri, its conduct falls within the purview of Missouri's long-arm statute." *Creative Compounds, LLC v. ThermoLife Int'l, LLC*, 669 S.W.3d 330, 337 (Mo. App. E.D. 2023) (quoting *State ex rel. Key Ins. Co. v. Roldan*, 587 S.W.3d 638, 642 (Mo. banc 2019)). Extraterritorial acts that result in consequences in this state are subsumed under the tortious act section of the long-arm statute. *Bryant*, 310 S.W.3d at 232.

As acknowledged by Appellants, the alleged libelous statements were made by Respondent, a resident of Colorado, to the Pikes Peak Association of Realtors, a Colorado entity, in response to the ethics complaint filed in Colorado by Appellants, and then forwarded to Appellants, in Missouri, by the Pikes Peak Association of Realtors.

The only connection the alleged tort has to the state of Missouri is that Appellants received copies of the statements in Missouri, where they reside. This is insufficient to show the alleged libel was committed by Respondent in Missouri. Appellants have failed to make a *prima facie* showing that Respondent committed libel *in* Missouri. While the reach of Missouri's long-arm statute is indeed long, it is not *that* long. We hold that Respondent is not subject to personal jurisdiction in Missouri under the specific facts of this case.

## Conclusion

Appellants' points are denied. The circuit court did not err in dismissing Appellants' petitions against Respondent for lack of personal jurisdiction. The circuit court's judgments are affirmed.[12]

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

---

[12] Respondent filed motions to dismiss Appellants' appeals based on Appellants' failure to file a transcript and failure to include a legal file that includes the necessary evidence, such as the affidavits. These motions were taken with the case. Respondent later supplemented the record on appeal by filing the transcript and her affidavit. We deny Respondent's motions to dismiss.